# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                            )
**BEVERLEY MARTIN,**                        )
                                            )
            **Plaintiff**                   )
                                            )
        v.                                  )     **Civil Action No. 07-2297 (RCL)**
                                            )
**CITIBANK, INC.,**                         )
                                            )
            **Defendant.**                  )
_____ )

## PLAINTIFF MARTIN'S OPPOSITION TO MOTION
## TO DISMISS AND TO COMPEL ARBITRATION

Plaintiff Beverley Martin ("Plaintiff") filed this case against Defendant Citibank, Inc.

("Defendant" or "Citibank") in the Superior Court for the District of Columbia on October 22, 2007

charging Citibank with sex discrimination, sexual harassment, and retaliation under the D.C. Human

Rights Act ("DCHRA") and under Title VII of the Civil Rights Act of 1964.  Plaintiff also asserts

a claim of negligent supervision under District of Columbia common law.

On December 19, 2007, Citibank issued its notice of removal.  As grounds for the removal,

Citibank relied only on this Court's original jurisdiction over Plaintiff's Title VII claims and not on

any grounds related to this Court's authority to compel arbitration.  (Notice of Removal at ¶ 5 (citing

28 U.S.C. § 1331).)  On December 27, 2007, however, Citibank moved to dismiss the Complaint and

compel arbitration.  Plaintiff opposes Defendant on its Motion on the grounds that Citibank has

waived its right to arbitration because it (1) first removed the case from state court to this forum; (2)

failed to comply timely with its contractual obligation to seek arbitration within the statute of

limitations for Plaintiff's Title VII and DCHRA claims; and (3) the arbitration policy is an

unenforceable unconscionable contract of adhesion under District of Columbia law.  Accordingly, Defendant's Motion to Dismiss and to Compel Arbitration should be denied.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

In this Court, "[a]lthough styled as a motion to dismiss, in a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed.R.Civ.P. 56(c)." *Hughes v. CACI, Inc.-Commercial*, 384 F.Supp.2d 89, 99-100 (D.D.C. 2005) (quoting *Technetronics v. Leybold-Geaeus GmbH*, 1993 WL 197028, at *2 (E.D.Pa.1993) (citations omitted); *Lok Tio v. Wash. Hosp. Center*, 2004 WL 2663149, at *2-3 (D.D.C.2004); and *Nelson v. Insignia/Esg, Inc.*, 215 F.Supp.2d 143, 147 (D.D.C.2002) (holding that "summary judgment [was] the proper procedural mechanism to use in evaluating whether the plaintiff must submit her claims to arbitration")).  In *Hughes*, the Court noted that the Defendant, as here, provided the Court with documents that were not attached to the complaint, including the defendant's dispute resolution policy and certain declarations.  *Hughes*, 384 F.Supp.2d at 93, n.3.  Accordingly, Defendant's Motion should be reviewed under a summary judgment standard.

To establish a basis for summary judgment, the moving party must show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that non-moving party's favor. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions,

not those of a judge." *George v. Leavitt*, 407 F.3d 405, 410 (D.C. Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255).

In ruling on a motion for summary judgment, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151.

## ARGUMENT

### I.    Defendant Citibank Has Waived Any Right to Arbitration.

Assuming *arguendo* that there exists a valid contract upon which Citibank may demand arbitration, a point that Plaintiff does not concede as set forth hereinbelow, Citibank nevertheless waived any right to arbitration.  The U.S. Court of Appeals for the D.C. Circuit has long recognized that [t]he right to arbitration, like any contract right, can be waived." *Cornell & Co. v. Barber & Ross Co*, 360 F.2d 512, 513 (D.C. Cir. 1966).  When evaluating whether a party has waived its right to arbitrate, the "essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987) (citing *Cornell* 360 F.2d at 513). "The question of waiver is one of law" and is amenable to judicial resolution. *Id.*; *Kahn v. Parsons Global Services, Ltd.*, 480 F.Supp.2d 327, 332 (D.D.C. 2007).

In this case, Citibank "has acted inconsistently with the arbitration right" in two ways: first, it removed the case from state court to this Court, and, second, Citibank failed to seek arbitration until the time for doing so had run out under the contract it seeks to enforce.  *See National Foundation*, 821 F.2d at 774 (citing *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966).  Consequently, this Court should refuse to compel arbitration and deny Defendant

Citibank's Motion to Dismiss and to Compel Arbitration.

**A.    Citibank Waived Its Right to Arbitration By Choosing to Pursue Its Claims In Federal District Court.**

In this case, Citibank, confronted with a Complaint filed in the Superior Court, elected to pursue the resolution of this conflict in this Court and to pursue its remedies through the judiciary rather than in arbitration.  If Citibank so desired, it could have simply moved to compel arbitration in Superior Court.  Nothing precluded such a motion in the Superior Court.  Having elected instead to proceed *by way of* this Court, the Court could conclude that Citibank elected this Court as the forum, and waived its right to arbitration.

The principle is well-established in the U.S. Court of Appeals for the D.C. Circuit that the decision to litigate may be seen "as an affirmative choice of the judicial forum and an abandonment of the right to seek arbitration." *National Foundation*, 821 F.2d at 776 (discussing *Cornell,* 360 F.2d at 513).  The Circuit Court also has rejected the assertion that a finding of prejudice to the objecting party is a prerequisite to a finding of waiver.  *Id.* at 777 ("This circuit has never included prejudice as a separate and independent element of the showing necessary to demonstrate waiver of the right to arbitration.").  Thus, Plaintiff respectfully submits that Plaintiff's choice of the judiciary should outweigh Defendant's untimely choice to  seek arbitration after it first elected to remove the case to this Court.

"[A]n election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995).  "An arbitration clause gives either party the choice of an alternative, nonjudicial forum in which to seek a resolution of a dispute arising out of the contract." *Id*.  Arbitration clauses are not to "allow or encourage the parties to proceed, either

4

simultaneously or sequentially, in multiple forums." *Id*. Citibank's choice to litigate in federal court, therefore, is an act in and of itself that is inconsistent with the arbitration right. *See National Foundation*, 821 F.2d at 774.

Indeed, Citibank was well aware of its opportunity to seek arbitration while in the Superior Court, under the relevant provisions in the D.C. Code that would have enabled Citibank to compel arbitration under state law, without invoking the jurisdiction of this Court. D.C. Code §§ 16-4302, 4316. (Defendant's Exhibit "Def. Ex." 2 at 4, n.4 (citing D.C. Code § 16-4301).) In the alternative, Citibank could have simply sought to enforce the provisions of the Federal Arbitration Act ("FAA") in Superior Court. *Southland Corp. v. Keating*, 465 U.S. 1, 13-14 (1984) (parties may enforce the FAA in state courts). Nor did Citibank remove this case to this Court pursuant to the FAA, which permits removal of cases from state courts "where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement." 9 U.S.C. § 205. Thus, Citibank consciously passed over three options that would have shown its desire to arbitrate this matter but instead chose to remove to this Court based strictly on this Court's jurisdiction over Plaintiff's Title VII claim. (Notice of Removal at 2 (citing 28 U.S.C. § 1331).) Citibank's choice was a "selection of forum" which "manifested an intention to resolve the dispute through the processes of the federal court." *Cabinetree*, 50 F.3d at 390.

Unlike cases in which this Court has found that minimal participation in a lawsuit by a party seeking to enforce arbitration was insufficient to find that the party waived its right to arbitration, Citibank took an affirmative step to select a more favorable forum. *Cf. Kahn*, 480 F.Supp.2d 327. While at times it may be appropriate to examine how extensively a party seeking to arbitrate has litigated to determine whether that party has waived its right to arbitrate, no such finding is *required*.

*See National Foundation*, 821 F.2d at 777.  In cases in which this Court has found insufficient participation in a lawsuit to find that a party had waived its right to arbitration, the party seeking to enforce arbitration took only defensive steps in the litigation in an effort to preserve its right and sought to go to arbitration at the earliest possible time.  For instance, in *Kahn*, the defendant removed to federal court on the basis of 9 U.S.C. § 205 of the FAA, evidencing its desire to arbitrate from the outset.  *Kahn*, 480 F.Supp.2d at 327, 333-34; *see also Brick v. J.C. Bradford & Company, Inc.*, 677 F.Supp. 1251, 1257 (D.D.C. 1987) (party seeking to arbitrate did not proceed in the litigation except to seek arbitration and respond to a motion for class certification); *Hughes v. CACI, Inc.-Commercial*, 384 F.Supp.2d 89, 99-100 (D.D.C. 2005) (in case initiated in federal court, party seeking to arbitrate filed motion to dismiss and compel arbitration as their first action).

Citibank, on the other hand, took the affirmative step to proceed to federal court despite recourse to arbitration in the Superior Court and without relying on the FAA to base its jurisdiction. Rather than evaluating this step under an "active participation" formula, Citibank's election is more appropriately seen as a presumptive waiver of its right to arbitrate.  *Cabinetree*, 50 F.3d at 390.[1]

In light of its choice to pursue this matter in federal court, permitting Citibank to remove the case from Superior Court, see which judge it would draw, then dismiss the case in favor of arbitration, would impermissibly allow Citibank to shop for its preferred forum.  Part of the rationale for the FAA is to prevent "forum shopping" by permitting access to arbitration in either the federal or state courts.  *Keating*, 465 U.S. at 15.  However, allowing Citibank to compel arbitration *by way*

---

[1]        Rather than setting a high bar for showing active participation in litigation when making the determination as to whether a party has waived, *National Foundation* stands for the proposition that parties, through their actions, can evidence a decision to waive their right to arbitrate.  *National Foundation*, 821 F.2d at 774.

*of* this Court, would condone the very forum shopping the FAA was designed to avoid and would squarely confront the policy that arbitration may not be used as a strategy to manipulate the legal process. *National Foundation*, 821 F.2d at 775.

### B.    Citibank Passed the Deadline to Submit to Arbitration.

According to the terms of the arbitration policy accompanying Citibank's Motion, Citibank waived any right to arbitrate by waiting past the time provided in the policy to move to compel arbitration. (Defendant's Exhibit ("Def. Ex.") 3.) The arbitration policy states that "Any proceeding under this procedure must be brought within the time period provided for within the statute(s) of limitations applicable to the claims asserted by the claimant." *Id.* at ¶ 26. On its face, therefore, the arbitration policy states Citibank must have moved to arbitrate within the one year statute of limitations for Plaintiff Martin's Title VII and D.C. Human Rights Act claims. Because it did not submit this matter to arbitration within the time provided by the arbitration policy, Citibank has waived its right to arbitrate. *Id.*

Citibank failed to arbitrate despite its knowledge of the pending dispute. Plaintiff Martin provided Citibank with ample notice of the dispute, yet Citibank never asserted or availed itself of its alleged rights under the arbitration policy. First, Plaintiff Martin complained of sexual harassment to Citibank managers starting in January of 2006. (Complaint at ¶ 16.) Plaintiff Martin continued to complain to Citibank through July of 2006. *Id.* at ¶ 16-29. She timely submitted a charge of discrimination with the Equal Employment Opportunity Commission. *Id.* at ¶ 31. Citibank participated fully in the EEOC proceeding by submitting a letter responding to Plaintiff Martin's claims as set forth in the Charge. (Ex. 1. (Letter, DeCesare to Smalls (11/30/2006).) In its response, Citibank did not assert any requirement to arbitrate the claims. On July 23, 2007, the

7

EEOC issued a "Dismissal and Notice of Rights" to Plaintiff Martin, which was copied to Citibank.

(Ex. 2. (EEOC Dismissal and Notice of Rights).)  The Notice informs Plaintiff that she has 90 days

to file a claim in federal court or her rights may be extinguished:

> NOTICE OF SUIT RIGHTS . . . You may file a lawsuit against the respondent(s)
> under federal law based on this charge in federal or state court. Your lawsuit must
> be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based
> on this charge will be lost. (The time limit for filing suit based on a state claim  may
> be different.)

*Id*. at 1.[2]

On July 25, 2007, Plaintiff's Counsel directed a letter to Alyson Klug, Citibank's Mid-

Atlantic Regional President, seeking to resolve the matter without recourse to litigation and inviting

the defendant to discuss a resolution "in lieu of litigation."[3] Counsel explicitly noted that "this case

presents facts that make out a compelling case of violations of Title VII of the Civil Rights Act of

1964, and the District of Columbia Human Rights Act."  *Id*.  Citibank did not acknowledge receipt

of Counsel's letter until September 18, 2007, and did not at any time raise the applicability of any

arbitration policy or propose the need for arbitration.  (Ex. 3. (Letter, Hook to Correia (9/18/2007).)

Citibank was, therefore, undeniably aware of the dispute, and, under the arbitration policy it seeks

to enforce, it was obligated to seek arbitration in a timely fashion.  (Def. Ex. 3 at ¶ 27).

Despite ample warning of the present dispute and ample time to request arbitration, Citibank

never even intimated the existence of an arbitration agreement until a conversation on December 10,

2007.  It was not until December 19, 2007 that Citibank requested arbitration, almost two months

---

[2]     As set forth below, together with the EEOC notice, Citibank's policy seems
intentionally designed to mislead employees to the wrong forum to resolve disputes.

[3]     Because the letter was sent for settlement purposes, counsel has not attached it to this
pleading, however, counsel will provide it at the Court's request.

after Plaintiff's statute of limitations had run.  Plaintiff Martin had 90 days to file suit under Title

VII from the date she received the right to sue letter.  The EEOC issued its dismissal and right to sue

on July 23, 2007.  (Ex. 2.)  Plaintiff Martin received the letter from the EEOC days later.  Thus,

Plaintiff Martin had 90 days from approximately July 26, 2007 to file suit (about October 24, 2007)

and Citibank had until that same date to request arbitration under the plain language of the

arbitration policy.  By failing to timely request arbitration, Citibank "has acted inconsistently with

the arbitration right."  *National Foundation*, 821 F.2d at 774.  As a result of Citibank's failure to so

request arbitration, it has waived its right to arbitration.

## II.     The Document Upon Which Citibank Seeks to Compel Arbitration, By Its Own Terms, Is Not a Contract and Therefore Does Not Create a Binding Obligation to Arbitrate.

In its Motion, Citibank relies upon (1) a receipt and acknowledgment of Citibank's "Dispute

Resolution and Employment Arbitration Policies" in 2001; (2) receipt of the Employee Handbook

in 2002; and (3) acknowledgment and receipt of the 2002 Employee Handbook,  as reflected on a

"Receipt Form,"as grounds for enforcing a *contractual* obligation to arbitrate.  (Def. Mem. at 1-2

("Plaintiff received and acknowledged the . . . Policies," "Plaintiff received the 2002 Employee

Handbook," . . . "Plaintiff acknowledged her receipt of the 2002 Employee Handbook").)  Citibank's

reliance is flawed in many ways.

First, as set forth in the Affidavit of Beverley Martin, accompanying this Opposition,

Plaintiff Martin states that she never received a copy of the Employee Handbook, despite numerous

requests for a copy, and that no one ever explained to her Citibank's arbitration policy.  (Ex. 4.

(Affidavit of Beverley Martin (1/10/2008) at ¶¶ 8, 17.)  Plaintiff Martin also avers that "[i]t was

commonplace for Citibank managers to request that employees sign documents affirming events that

never took place."  *Id.* at ¶ 4.  In her Affidavit, executed without reviewing the documents

accompanying Defendant's Motion, Plaintiff Martin explains that in 2001 she received a one page document that she was told to sign, and that she had to sign the document "if I wanted to keep my job and that all Citibank employees had to sign the document to remain employed." *Id*. at ¶ 7. Ms. Martin avers, "I signed the document because I feared that I would lose my job if I did not." *Id.*

Second, the 2001 "acknowledgment" appears to be page two of a two page document. (Def. Ex. 1.)[4/] The language above which Plaintiff's signature appears notes "I have received the U.S. Consumer Group Dispute Resolution and Employment Arbitration Policies." Contrary to Defendant's representation, nowhere on the page does Plaintiff state that she *agrees* to arbitration. (Def. Mem. at 2.)

Third, Citibank asserts that Plaintiff's *receipt* of the 2002 Employee Handbook "which contains the Company's Employment Arbitration Policy" contractually binds Plaintiff to arbitrate her claims against Defendant. However, as the Employee Handbook plainly states in relevant part:

> Except for the Employment Arbitration Policy," nothing contained in this *Handbook* (nor the *Handbook* itself) should be considered a contract of employment. . . .

(Def. Ex. 3 at Introduction ¶ 4.)

Therefore, by its terms, the Employee Handbook is not a ***contract*** upon which a court may compel arbitration pursuant to the FAA. (Def. Mem. at 4.)[5/] Defendant urges the Court to follow

---

[4/]     Defendant's Exhibit 1 appears to support Plaintiff's account of how she came to sign the document, as it is an incomplete, single page document.

[5/]     This Court has ruled previously that an employee handbook that "expressly disavows that it constitutes and employment contract" cannot reasonably be interpreted to be a contract. *Lance v. United Mine Workers of America 1974 Pension Trust*, 355 F.Supp.2d 358, 361 (D.D.C. 2005) (RCL) (vacated on other grounds) ("When an employee handbook clearly states that it is not an employment contract that ends the matter."); *Lewis v. NVT Technologies, Inc.*, 118 F.Supp.2d 51, 54 (D.D.C. 2000) (RCL) (employee handbook and form produced by employer and signed by employee indicating that acknowledges he is an at-will employee did not confer contractual rights

the FAA language and case law authorizing a court to compel arbitration where "[a] written provision . . . *in a contract* evincing a transaction involving commerce to settle by arbitration a controversy thereafter *arising out of such contract* . . . shall be valid, irrevocable, and enforceable. . . ." (Def. Mem. at 4 (quoting 9 U.S.C. §§ 2, 3 (1999)) (emphasis added)). However, because the "Employment Arbitration Policy" is a provision in the Employee Handbook, which handbook is *not* a contract, the statute does not support Defendant's motion to compel arbitration. The Arbitration Policy is not a "provision in . . . a contract," and should not be enforced like one. (Def. Mem. at 4.) As well, the case law on which Defendant relies does not compel arbitration. *Id.* at 4 (quoting various cases) ("[W]here the *contract contains* an arbitration clause. . .") (emphasis added). The Employee Handbook is not a contract that *contains* an arbitration clause.

Similarly, the 2002 "Receipt Form" is not a contract and, by its language, does not reflect any agreement to arbitrate. (Def. Mem. at 3-4; Def. Ex. 4.) Indeed, the only language purporting to be an "agreement" by the employee to arbitrate is language Defendant cites from the Employee Handbook, which is not a contract, which is quoted at page three of Defendant's Memorandum. (Def. Mem. at 3 ("You agree to follow our dispute resolution/ arbitration procedure for employment disputes. . . .").) If the Employee Handbook is not a contract, by its own terms, and as crafted by Defendant, the Court should not rely upon language in the Handbook that asserts that the employee agrees to follow arbitration procedures for any employment dispute. There is no contract to arbitrate.

In *Diaz v. Arapahoe (Burt) Ford, Inc.,* the court denied an employer's motion to dismiss Plaintiff's discrimination claims, rejecting the defendant's contention that the plaintiff had entered

---

on employee); *Youngblood v. Vistronix, Inc*., 2006 WL 2092636 at *2-4 (D.D.C.) (RCL) (same).

into a "binding" arbitration agreement.  68 F. Supp.2d 1193, 1194 (D.Colo. 1999).  In so doing, the

court held that an employee's acknowledgment and receipt of the employee handbook did not make

legally binding the section of the handbook providing for arbitration where a disclaimer in the

handbook provided that "nothing other than the arbitration provision is legally enforceable."  *Id.*

Citibank's assertion in its policy is virtually identical in its expression.  (Def. Ex. 4.)  In denying the

Defendant's motion to dismiss, Judge Kane remarked, "[w]hile an employer may wish the power

to select which representations in its manual an employee's 'acknowledgment and receipt' will make

binding, I will neither confer such power nor give it the imprimatur of this court."  *Id.*

A knowing waiver of the right to a judicial forum must consist of an explicit presentation

of the arbitration clause by the employer and an explicit acceptance of that clause by the employee.

*Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1156 (9th Cir. 1998).  In *Nelson v. Cyprus Bagdad*

*Copper Corp.*, the Ninth Circuit rejected the argument that an employee's continued employment

after receiving and reading the employee handbook which contained a arbitration clause amounted

to a "knowing agreement."  119 F.3d 756, 762 (9th Cir. 1997).  Instead, the court held that, "[a]ny

bargain to waive the right to a judicial forum for civil rights claims . . . must be express: the choice

must be explicitly presented to the employee and the employee must explicitly agree to waive the

specific right in question."  *Id.*

Consistent with the Ninth Circuit opinions, the Court in *Walker v. Air Liquide America*

*Corp.,* found that signed acknowledgments which do not themselves contain any arbitration

provision are insufficient to create a written agreement to arbitrate.  113 F.Supp.2d 983, 986

(M.D.La. 2000).  "The acknowledgment signed by Walker in this case does not indicate that he

consented to anything.  To the contrary, it provides that: '[a]ll employees are required to sign this

form as acknowledgment that they have received and read the Employee Handbook.'" *Id.*

Here, Plaintiff Martin has explained that Citibank compelled her to sign the acknowledgment of receipt of the arbitration policy in 2001 and that she signed it out of fear that she would otherwise lose her job, that she did not receive a copy of the Employee Handbook at any time, despite numerous requests for it, and that no one ever explained to her Citibank's arbitration policy.[6/]

The circumstances in this case plainly evidence a lack of assent by Plaintiff Martin to the provisions contained in the arbitration policy. District of Columbia law unambiguously requires a "meeting of the minds" as to all material terms for a contract to be formed. *Bailey v. Federal Nat. Mortg. Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000). While a signature ordinarily indicates that a party is bound by the contract, this is not the case when she can "show special circumstances relieving . . . her of such an obligation." *Booker v. Robert Half International, Inc.*, 315 F.Supp.2d 94, 100 (D.D.C. 2004). Special circumstances relieving Plaintiff Martin of any contractual obligation are plainly found in this case as Citibank repeatedly refused to allow Plaintiff Martin to see the employee handbook.

Finally, "'the unilateral promulgation by an employer of arbitration provisions in an Employee Handbook does not constitute a 'knowing agreement' on the part of an employee to waive a statutory remedy provided by a civil rights law.'" *Bailey*, 209 F.3d at 746 (quoting *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir.1997)). In this case, Citibank, during the

---

[6/]    The District of Columbia Court of Appeals also has long acknowledged the appropriateness of consideration of the parties' relative "education or lack of it." *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965). The Court may easily infer Plaintiff Martin's lack of familiarity with the EEOC or United States civil rights legal procedures, compared to Citibank, in light of her relative lack of work experience in any private employment setting in the United States before 2001. Martin Aff. at ¶ 16. Citibank did nothing to enhance Plaintiff's understanding during her tenure. *Id. generally.*

course of Plaintiff Martin's employment, forced her to sign acknowledgments that she received the arbitration policy or handbook as a condition of her employment, even though she did not receive them. Unlike other cases in which the employee at least had the opportunity to read the employment policy at some point, Defendant failed to present the employee handbook to Plaintiff Martin when it demanded her signature and failed again upon her repeated requests, even after she had complained of sexual harassment. (Ex. 4 at ¶¶ 8-13.) An employee should only be bound when *actually* afforded the opportunity to read the contract. *See Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965). Thus, there was no mutual assent to the terms of the agreement, and there is no contract.

### III.    The Arbitration Policy Is Unenforceable.

Even if the Court finds that Citibank did not waive its right to arbitrate, and that there is a contract, the contract is unenforceable in this case. Defendant asserts in perfunctory fashion, but incorrectly, that a "presumption of arbitrability" proceeds from out-dated precedent, that arbitration is "so strongly favored" that the agreement binds the plaintiff. (Def. Mem. at 4-6.) However, the D.C. Circuit has explicitly distinguished the rationale favoring arbitration in the collective bargaining setting from the separate important concerns that the Court must examine in the context of proposed arbitration of an individual employee's claims, and in particular, statutory claims. *See Cole v. Burns International Security Services*, 105 F.3d 1465, 1476-77 (D.C. Cir. 1997).

Before binding Plaintiff Martin to the terms of the arbitration policy, this Court must first determine that (1) the parties entered into a valid and enforceable agreement, and (2) the agreement encompasses the claims raised in Plaintiff Martin's Complaint. *Nelson v. Insignia/ESG, Inc.*, 215 F.Supp.2d 143, 149-50 (D.D.C. 2003). As set forth above, Plaintiff asserts that Ms. Martin and

14

Citibank did not enter into a valid and enforceable agreement.  *Supra*, Section II.  As well, Plaintiff respectfully submits that, under all of the circumstances in this case, and well-established District of Columbia law, the arbitration policy is an unconscionable contract of adhesion, and is therefore invalid.[7]  *See Patterson v. Walker-Thomas Furniture Co., Inc.*, 277 A.2d 111, 113 (D.C. 1971). Further, the terms of the contract are so favorable to Citibank as to render the contract unenforceable. *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C. Cir. 1997).

### A.    The Arbitration Policy Is an Unenforceable Contract of Adhesion.

Because Ms. Martin did not have a meaningful choice as to whether to agree to any arbitration policy, signing only receipts acknowledging receipt of a policy and a handbook that Citibank in reality failed to provide, if she wanted to continue her employment at Citibank, the policy must be deemed unconscionable and unenforceable.  In the District of Columbia:

> Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.  Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction.

*Patterson*, 277 A.2d at 113 (citing *Williams v. Walker-Thomas Furniture Co*., 350 F.2d 445, 449 (D.C. Cir. 1965).  The District of Columbia Court of Appeals has continued to be concerned that employment contracts forcing arbitration "amount to contracts of adhesion forced on employees, with the result that enforcement of the arbitration provision would be unconscionable." *Benefits Communications Corp. v. Klieforth*, 642 A.2d 1299, 1305 (D.C. 1994) (Ferren, J. concurring).

---

[7]    District of Columbia law governs because the documents were signed, and Plaintiff Martin was employed by Defendant, in this jurisdiction.

15

**1.    Plaintiff Martin lacked meaningful choice in signing the agreement.**

Plaintiff Martin's account of the direction she received to sign single page acknowledgment forms, together with Defendant's admittedly incomplete Exhibit 1, reflecting the 2001 single page acknowledgment of receipt of a document Ms. Martin says that she did not receive, demonstrate the lack of any meaningful choice to sign the documents. (Ex. 4 at ¶ 8.)  Ms. Martin was told that she had to sign the document if she wanted to keep her job. *Id*. at ¶ 7.  The power differential between Citibank, through its managers, and Plaintiff Martin, taken together with the conditions under which Plaintiff Martin was forced to sign the acknowledgment show that she lacked any meaningful choice in signing the document.  The first indicia of a contract of adhesion is a wide difference in bargaining power between the parties.  "In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power." *Williams*, 350 F.2d at 449.

Furthermore, Citibank exploited its power to Plaintiff Martin's detriment by thrusting upon her contract terms that it ultimately would not even permit her to see.  In so doing, Citibank deprived Plaintiff Martin "a reasonable opportunity to understand the terms of the contract." *Id.*  Citibank offered Plaintiff Martin the policy on a "take-or-leave basis" that Citibank now claims to bind her to arbitration. *Hooters of America, Inc. v. Phillips*, 39 F.Supp.2d 582, 614 (D.S.C. 1998) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 600 (Stevens, J. dissenting)).  First, Citibank conditioned Plaintiff Martin's continued employment on her acknowledgment that she received the arbitration policy and handbook.  (Ex. 4 at ¶ 7.)  Citibank failed to provide a copy of the arbitration policy, or any training regarding the policy, despite its human resources manager's promise to explain the details of the policy soon after Plaintiff acknowledged receipt of it. *Id*.  Citibank never provided either the arbitration policy or the handbook, despite her repeated requests for a copy of

16

the handbook. *Id*. at ¶¶ 9-13. Indeed, even when Plaintiff Martin complained of sexual harassment to Bernardo Rojas and Eric Johnston, she requested a copy of the handbook, but her requests were ignored. *Id*. at ¶¶ 10-11. Citibank, as a consequence of its actions, denied Plaintiff Martin an opportunity to read and understand the arbitration policy. Therefore, "the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld." *Walker-Thomas Furniture Co.*, 350 F.2d at 449. In this case, the Court should so conclude, and deny Defendant's motion to compel arbitration.

## 2. The terms of the contract are so favorable to Citibank as to render the contract unenforceable.

The contract terms forced upon Plaintiff Martin, are so one-sided and favorable to Citibank as to render the contract unenforceable. The employer does not have "a free hand in requiring arbitration as a condition of employment." *Cole v. Burns International Security Services*, 105 F.3d 1465, 1480 (D.C. Cir. 1997). Instead, the arbitration proceedings must provide an adequate forum for Plaintiff Martin to vindicate her rights. *Id*. at 1481 (citation omitted).

As a threshold matter, the arbitration policy seems designed to thwart an employee's effort to pursue her civil rights claims. The policy ambiguously states:

> this Policy does not exclude the jurisdiction of the Equal Employment Opportunity Commission ("EEOC") and/or state and local human rights agencies to investigate alleged violations of the laws enforced by the EEOC and/or these agencies.

Def. Ex. 3 at p.35. It does not indicate whether the employee should or should not go to the EEOC. To be sure, if the employee fails to exhaust her administrative remedies before the EEOC, the employer will hold the defect against her under law. However, if the employee files a charge at the EEOC, the end of that process directs her to file suit within 90 days. (Ex. 2.)

17

Plaintiff states that she did not know she should go to the EEOC until a friend or family member suggested it to her.  (Ex. 4 at ¶ 14.)  This ambiguity favors the employer, is unconscionable and unenforceable.

The terms of the Citibank arbitration policy are one-sided in favor of Citibank in the following impermissible ways:

- The policy expressly denies the arbitrator authority to award punitive or exemplary damages "except where expressly provided by applicable statute," thereby eliminating the opportunity for such damages for Plaintiff Martin's common law claim of negligent supervision.  (Def. Ex. 3 at ¶ 20(b); Complaint at Count V.)

- Citibank "reserves the right to revise, amend, modify, or discontinue the policy at any time in its sole discretion," making the entire agreement illusory.  (Def. Ex. at ¶ 27.)  The agreement lacks consideration and is not mutual.

- The policy requires employees to demand arbitration within the time period provided by the statute of limitations applicable to the claims but does not include a parallel obligation on the part of Citibank and in fact "does not require Citibank to institute arbitration." *Id*. at p. 35 (Scope); ¶ 1.

- The requirement that the employee initiate an appeal of a termination decision, under the Dispute Resolution Policy, within 30 days, effectively shortens the statute of limitations for the employee. *Id*. at p. 36.

- The requirement that the employee's demand for arbitration name all of the witnesses does not find a reciprocal obligation on Citibank's part. *Id*. at ¶ 1.

- The policy limits interrogatories to the identification of witnesses and arbitrarily allows only one set of interrogatories. *Id*. at ¶ 12.

- The policy authorizes, but does not require, the arbitrator to order further discovery. *Id*. The arbitrator may, but may not, order further discovery, other than the single set of interrogatories and request for production.  Because the arbitrator has the authority to decide pre-hearing dispositive motions, the policy should not limit Plaintiff's ability to obtain full discovery. *Id*. at ¶ 13.

- The policy permits the arbitrator to "receive and consider the evidence of witnesses by affidavit," negating Plaintiff's opportunity to cross-examine. *Id*. at ¶ 15.  Because Citibank freely has the ability and access to take statements from Citibank employees, but Plaintiff lacks such ability or access without a subpoena from the

arbitrator, this presents an enormous and unfair advantage to Citibank.

The procedural terms of Citibank's arbitration policy so favor the company over the employee that they render the agreement unconscionable or otherwise unenforceable. The D.C. Circuit required in *Cole* that an arbitration agreement is enforceable only if it provides for "all of the types of relief that would otherwise be available in court." *Booker*, 315 F.Supp.2d at 104 (quoting *Cole*, 105 F.3d at 1482). "Numerous federal courts have found that provisions in arbitration agreements excluding or limiting the availability of punitive damages violate public policy and are unenforceable." *Id.* (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 670-74 (6th Cir.2003) (*en banc*); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir.), *cert. denied*, 535 U.S. 1112 (2002); *Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1286 (11th Cir.2001); *Brown v. Dorsey & Whitney, LLP*, 267 F.Supp.2d 61, 77 (D.D.C.2003)).

Here, Plaintiff Martin asserts a claim of negligent supervision in her Complaint. (Complaint at Count V.) Under District of Columbia law, punitive damages would be available to Plaintiff Martin for her common law claim. *See*, *e.g.*, *Daka, Inc. v. McCrae*, 839 A.2d 682, 696-97 (D.C. 2003). However, the arbitration policy denies the arbitrator authority to award punitive or exemplary damages for common law claims. (Def. Ex. 3 at ¶ 20(b).) For this reason alone, the arbitration policy is unenforceable.

Next, the arbitration policy impermissibly cuts short many of Plaintiff Martin's procedural rights. To permit a case to go to arbitration, the arbitration procedure must provide for a "fair and simple method by which the employee can secure necessary information to present his or her claim." *Cole*, 105 F.3d at 1483 & n.11; *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1261 (9th Cir. 2005).

As mentioned, the arbitration policy provides Citibank with enormous procedural advantages in arbitration, the greatest of which, of course, is denying Plaintiff's opportunity to present her claims to a jury composed of members of this community. Citibank has most of the information (documents and witnesses) necessary for Plaintiff to prosecute her case in its possession or under its control. Under the arbitration policy, Plaintiff does not have the express right, comparable to that of Citibank, to gain access to this information to adequately vindicate her statutory and common law claims. Under the terms of the arbitration policy, Plaintiff does not have the guaranteed right to "secure the necessary information to present . . . her claim." *Cole*, 105 F.3d at 1483 n.11; *see also Phillips*, 39 F.Supp.2d at 614-15. As a result, arbitration in this case will not present Plaintiff Martin with a fair forum to vindicate her claims and the arbitration policy should be held to be unenforceable.

Finally, Citibank reserved for itself "the right to revise, amend, modify or discontinue the Policy at any time in its sole discretion." (Def. Ex. 3 at ¶ 27.) The inclusion of a unilateral modification clause renders the arbitration provision severely one-sided and renders the entire policy illusory and unenforceable. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003); *Perez v. Hospitality Ventures-Denver LLC*, 245 F.Supp.2d 1172, 1175 (D. Colo. 2003) (as a result of the inclusion of a unilateral modification provision, "the arbitration agreement was unilateral rather than mutual and hence no agreement at all"); *Bragg*, 487 F.Supp.2d at 608). Accordingly, the policy is unenforceable.

The policy provisions made binding only on the employee, coupled with Citibank's reservation of the right to amend the policy at its sole discretion make the policy unilateral and unconscionable. In the case of arbitration agreements, at least a modicum of bilaterality is required.

20

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) (citing *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)).  Indeed:

> Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on "business realities."

*Armendariz*, 6 P.3d at 692.

In this case, Citibank seeks to force the "weaker party to arbitrate claims" but does not subject itself to the same terms.  *Bragg v. Linden Research, Inc.*, 487 F.Supp.2d 593, 607 (E.D. Pa. 2007).  "In the context of an arbitration agreement imposed by the employer on the employee, such a one-sided term is unconscionable." *Armendariz*, 6 P.3d at 692.

## IV.    Conclusion

For the foregoing reasons, Plaintiff Martin respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss and to Compel Arbitration in its entirety and direct Defendant to file an Answer to Plaintiff's Complaint.

Respectfully Submitted,

WEBSTER, FREDRICKSON, HENRICHSEN, CORREIA & PUTH, P.L.L.C.


    */s/   Linda M. Correia*
Linda M. Correia #43527
1775 K Street, N.W., Suite 600
Washington, D.C.  20006
(202) 659-8510

Attorney for Plaintiff Martin

21

## CERTIFICATE OF SERVICE

I certify that on this 10th day of January, 2008, a copy of the foregoing Plaintiff's Opposition to Motion to Dismiss and to Compel Arbitration and proposed order was mailed, by first class mail, postage prepaid, to:

Paul J. Kennedy
Katherine A. Goetzl
Littler Mendelson, P.C.
1150 17th St. N.W.
Suite 900
Washington, D.C. 20036

_/s/_ **_Linda M. Correia_**
Linda M. Correia #43527
1775 K Street, N.W., Suite 600
Washington, D.C.  20006
(202) 659-8510

Attorney for Plaintiff Martin

# Exhibit 1

***Martin v. Citibank, Inc.***, **Civil Action No. 07-2297 (RCL)**



Nicholas De Cesare, Jr.
*Vice President & Senior Counsel*

*Global Consumer Group
Employment Law*

Citigroup Inc.
One Court Square
9th Floor
Long Island City, NY 11120

Tel 718 248-3982

*VIA OVERNIGHT MAIL*

November 30, 2006

Ms. Tracy Smalls
U.S. Equal Employment Opportunity Commission
Washington Field Office - 570
1801 L Street, N.W., Suite 100
Washington, DC 20507

Re:    *Beverley J. Martin v. Citibank, Federal Savings Bank*[1]
        EEOC Charge No.: 570-2006-01726

Dear Ms. Smalls:

The following presents the statement of position of Citibank, Federal Savings Bank ("Citibank" or "Respondent") in connection with the above referenced Charge of gender discrimination and retaliation, which we find to be both procedurally defective and totally without merit.[2]  Charging Party, a current employee, alleges that: on or around December 9, 2005, Charging Party was sexually harassed by a co-worker, Fred Winfield ("Winfield"); she complained to Human Resources both in New York and D.C.; a proper investigation into her allegations was not conducted; and six months later she was suspended and put on six (6) months of "probation" based on her gender (female) in retaliation for raising an earlier complaint of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended. Respondent categorically denies these allegations of gender discrimination and retaliation. Respondent's actions were motivated solely by legitimate, non-discriminatory, business reasons based on the application of uniform policy and practice, the conduct of a prompt and fair investigation of Charging Party's complaint and Charging Party's own misconduct for which she was duly warned in accordance with established policy and in the same manner as any similarly situated employee.

---

[1]  Respondent was incorrectly named "Citibank/Group" in the caption of the Charge.

[2]  This statement of position and supporting documentation (as well as any other information or documentation provided during the course of this investigation) contain confidential and proprietary information. As such, it should not be disclosed or disseminated to any party without the prior written approval of the undersigned.

Ms. Tracy Smalls
November 30, 2006
Re:
Page 2

## PROCEDURAL DEFECTS

The Charge fails to set forth a viable claim of retaliation. To establish a *prima facie* showing of retaliation there must be a sufficiently close relationship in time between the protected activity and the adverse employment action so as to give rise to a reasonable inference of a retaliatory motive. Charging Party asserts that the protected activity occurred "on or around December 9, 2005" while the alleged adverse employment action occurred in June/July 2006, a gap in time of approximately six (6) months. Respondent respectfully submits that this difference in time is sufficiently attenuated that a reasonable inference of retaliatory motive cannot be drawn. For this reason alone the Charge should be dismissed. Without waiving our right to later assert the foregoing or any other procedural defenses, we will address the substance of the allegations below.

## EMPLOYMENT HISTORY

Respondent hired Charging Party on November 1, 1999. She has held a variety of positions with Respondent, namely Client Service Manager, Financial Center Operations Manager and most recently Bank at Work Relationship Manager. Her job responsibilities include marketing bank services and products to commercial and other types of business establishments.

## ALLEGATIONS OF DISCRIMINATORY AND RETALIATORY TREATMENT

Charging Party alleges, in particular, that, in or around December 9, 2005, Winfield began touching her inappropriately and making sexual advances. She also alleges that she complained to Human Resources, which conducted an "inadequate" investigation. She further alleges that she was unfairly suspended and disciplined for telling a co-worker to "shut up" at a meeting on June 16, 2006. Charging Party lastly alleges that the foregoing constitutes gender discrimination and retaliation for raising a prior complaint of harassment. Respondent categorically denies these allegations of gender discrimination and retaliation.

Respondent maintains a clear policy expressing its commitment to equal opportunity in employment and prohibiting retaliation and discrimination, in all terms and conditions of employment, on any protected class basis including, but not limited to, gender (*see* attached Exhibit A).

It was on March 28, 2006 when Charging Party first complained to her Operations Manager, Bernard Rojas ("Rojas"), and the Financial Center Manager, Patricia Johnson ("Johnson") that Winfield made unwelcome and sexually suggestive comments to her and touched her on the arm. In accordance with established policy, a

Ms. Tracy Smalls
November 30, 2006
Re:
Page 3

prompt and thorough investigation was conducted.[3] The investigation determined that
Winfield had made inappropriate remarks to Charging Party and another co-worker,
although the co-worker stated that she did not consider the remarks sexually suggestive
in nature. It was also found that, when asked to refrain from making these remarks,
Winfield did so. The investigation also disclosed Winfield was observed touching female
customers on the arm, in a non-sexual manner, when escorting them to the door. Based
on the foregoing, Respondent placed Winfield on a final written warning, transferred
him to another Financial Center, including her, Charging Party stated to a co-worker, Kamal
training program designed to sensitize employees to harassment issues (see attached
Exhibit B).[4] The warning expressly states that his performance must improve or he will
be subject to termination. Charging Party was advised of the investigation as well as the
actions taken and expressed satisfaction with the outcome, a fact which also undercuts
her allegations of discriminatory animus.

On June 16, 2006, during a pre-opening meeting of all employees at Charging
Party's Financial Center, including her, Charging Party stated to a co-worker, Kamal
Islam ("Islam"): "Shut up and learn to speak English."  The remark was made in the
presence of all attendees at the meeting. An immediate investigation was conducted
and, in accordance with standard operating practice, Charging Party was placed on a
paid suspension.[5] The investigation confirmed that Charging Party made the remark at
issue to Islam and uncovered other inappropriate behavior.[6] Moreover, Charging Party
had been counseled in the past about her unprofessional behavior/remarks towards co-
workers. As a result, Respondent placed Charging Party on a final written warning (see
attached Exhibit D). Per established policy, all final written warnings are six (6) months
in duration. Moreover, Winfield, who never complained of any form of discrimination
or harassment, was placed on final written warning for his misconduct. Since Charging

---

[3]  It should be noted that this investigation was conducted by a seasoned Human Resources
Manager from Respondent's affiliated business located in New York. This was done to assure the
objectivity of the investigation and to honor Charging Party's request that a Human Resources
individual outside the business conduct the investigation. This fact totally undercuts her
allegations of discriminatory animus.

[4]  As an exempt employee, Winfield is not afforded the benefit of progressive disciplinary action.
Per established policy, the employment of exempt employees can be terminated without notice or
opportunity for corrective action. Depending on the circumstances, a final written warning may
be issued before termination (see attached Exhibit C).

[5]  This behavior included use of profanity in the Financial Center, negative comments about co-
workers and disrupting new hires during training.

[6]  While on suspension, Charging Party suffered no loss in benefits or income. Respondent
respectfully submits that this suspension cannot, therefore, be viewed as an adverse employment
action, as a matter of law.

Ms. Tracy Smalls
November 30, 2006
Re:
Page 4

Party also engaged in misconduct, although of a different type than Winfield, she was likewise placed on a final written warning. These facts totally undercut her allegations of retaliatory animus.

## CONCLUSION

In sum, Respondent has treated Charging Party in all respects without regard to her gender or her raising a previous complaint of sexual harassment and vigorously denies her allegations of gender discrimination and retaliation. Respondent's actions were motivated solely by legitimate, non-discriminatory, business reasons based on the application of uniform policy and practice, the conduct of a prompt and fair investigation and Charging Party's own misconduct for which she was duly warned in accordance with established policy and in the same manner as any similarly situated employee. As there is, therefore, is no nexus between Respondent's actions and Charging Party's gender and/or her raising of a previous complaint of sexual harassment, the Charge should be dismissed with a finding of no reasonable cause.

Very truly yours,

*Nicholas De Cesare*

Nicholas De Cesare

Attachments

# Exhibit 2

*Martin v. Citibank, Inc.*, **Civil Action No. 07-2297 (RCL)**

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Beverley J. Martin<br>1200 Redcrested Ct.<br>Upper Marlboro, MD 20774 | From: | Dallas District Office<br>207 S. Houston St.<br>3rd Floor<br>Dallas, TX 75202 |
|---|---|---|---|

|  | ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2006-01726 | **Janet V. Elizondo,**<br>**Deputy Director** | **(214) 253-2852** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| ☐ | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☐ | Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge. |
| ☐ | While reasonable efforts were made to locate you, we were not able to do so. |
| ☐ | You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged. |
| ☒ | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| ☐ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☐ | Other (briefly state) |

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

**Michael C. Fetzer,**
**Director**

7/23/07
*(Date Mailed)*

cc:    **Nicholas De Cesare**
**Citibank (West) FSB**
**One Court Square 9th Floor**
**Long Island City, NY 11120**

Enclosure with EEOC
Form 161 (3/98)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --**    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# Exhibit 3

*Martin v. Citibank, Inc.*, Civil Action No. 07-2297 (RCL)

**Elizabeth I. Hook**
*Vice President* One Court Square
Senior Counsel

**Citigroup Inc.**

9th Floor
Long Island City, NY 11120

*Global Consumer*
*Employment Law Group*

Tel 718 248-9762

# citi

*VIA Facsimile (202) 659-4082 & U.S. Mail*

September 18, 2007

Linda M. Correia, Esq.
Webster, Frederickson, Henrichsen,
   Correia & Puth, P.L.L.C.
1775 K Street, N.W., Suite 600
Washington, DC 20006

      Re:  *Beverley Martin*

Dear Ms. Correia:

Your letter dated July 25, 2007, regarding Ms. Beverley Martin has been referred to me for response.

I am looking into the issues you have raised and will respond to you shortly.  In the meantime, please feel free to contact me should you have any questions.

Sincerely,

*Elizabeth Hook*

Elizabeth I. Hook

# Exhibit 4

*Martin v. Citibank, Inc.*, Civil Action No. 07-2297 (RCL)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BEVERLEY MARTIN,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **Civil Action No. 07-2297 (RCL)** |
| ) | |
| **CITIBANK, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## AFFIDAVIT OF BEVERLEY MARTIN

I, Beverley Martin, hereby declare under penalty of perjury as follows:

1.     I am over the age of eighteen, a resident of Upper Marlboro, Maryland, and I am competent to testify with personal knowledge of the matters stated herein.

2.     When I joined Citibank in November of 1999 as a Relationship Manager, there was not a professional human resources manager assigned to the branch in which I was employed.

3.     Citibank's employment policies were never made clear to me.  I never received training in personnel matters in my capacity as a Operations Manager or as a Bank at Work Relationship Manager; nor did anyone explain to me Citibank's procedures regarding complaints of sexual harassment or discrimination.

4.     It was commonplace for Citibank managers to request that employees sign documents affirming events that never took place.  For instance, managers regularly asked me to sign documents stating that I attended meetings that I did not attend.

5.     From the start of my tenure at Citibank until approximately 2002, I frequently signed

documents when requested because it was a part of the company culture and I regularly saw other employees doing the same.

6.     In or around late 2000 or early 2001, LaTonya Johnson was assigned as the human resources manager who oversaw the branches in which I worked.

7.     In 2001, I received a one page document that I was told to sign by the Area Operations Manager.  I did not understand what the document was, and when I asked for an explanation, the Area Operations Manager told me I had to sign the document or else I could lose my job.  I then telephoned LaTonya Johnson to ask what the document was.  LaTonya Johnson told me that I had to sign the document if I wanted to keep my job and that all Citibank employees had to sign the document to remain employed.  LaTonya Johnson told me that she would soon be visiting all of the branches to explain the significance of the document, but she never did.  I signed the document because I feared that I would lose my job if I did not.

8.     I have never seen Citibank's employee handbook, nor has Citbank ever provided me with a handbook.

9.     In the course of my duties as an Operations Manager, subordinates would ask me human resources-related questions.  To answer those questions, I frequently contacted LaTonya Johnson and, on many occasions, requested to see the employee handbook.  Ms. Johnson would answer the question for me, but never provided me with a copy of the handbook.

10.     On or about March 15, 2006, I asked Eric Johnston, a human resources manager, to see the handbook because I did not know my rights regarding the sexual harassment I suffered while working at Citibank.  Eric Johnston did not provide me with a copy of the handbook, nor did he answer any questions I had regarding Citibank's policies or complaint procedures.

11.    On or about March 15, 2006, I asked for a copy of the handbook from my boss, Bernardo Rojas.  Bernardo Rojas referred me to Eric Johnston.

12.    I also asked Emily Milian for a copy of the handbook so I could better understand my rights under Citibank's policy.  Emily Milian did not provide me with a handbook or answer any questions I had regarding Citibank's policies or complaint procedures.

13.    No one in the human resources department, or elsewhere in Citibank, asked me to fill out any paperwork after I had complained of sexual harassment.  After I was informed that Citibank would "take care of" the employee who was sexually harassing me, Fred Winfield, I asked if I could have a copy of the report or something else in writing to make sure that my rights were protected. I asked what my rights were, whether to have something in writing or to make sure that Mr. Winfield would not be able to contact and sexually harass me again.  I was told I could not have anything in writing.  Again, I asked for a copy of the employee handbook and Citibank did not provide it.

14.    No one at Citibank informed me about my right to pursue this dispute beyond the internal "investigation" that I had been told Citibank had done.  No one at Citibank informed me that I should pursue this dispute through the Equal Employment Opportunity Commission ("EEOC") or that I had to submit to arbitration.  It was not until I confided my problem with Mr. Winfield to a friend outside of Citibank and to my family that I learned that I should submit a claim to the EEOC.

15.    In September of 2007, Citibank sent me the signature page for a business ethics document.  In October of 2007, a Citibank human resources employee called me and asked me to sign the document.  The document was backdated.  I was told that Citibank was doing an audit and that I needed to sign it by October 22, 2007.  I told the Citibank employee that I did not understand the document and I refused to sign it.

3

16.    I first came to the United States from Jamaica in 1973 when I was 19 years old.  I spent two years in New York without working.  In 1975 I moved to England where I remained for four years.  In 1979, I returned to the United States and worked in a bank in Arizona until approximately 1980 or 1981.  In or about 1980 or 1981, I moved to Homestead, Florida, where I remained for approximately four or five years.  Between 1979 and 1986 the banks in which I was employed were located on military bases.  In 1986, I again left the United States and lived in England and Germany before returning to the United States in 1996.  During that time, I worked at banks on military bases.

17.    No one ever explained to me Citibank's arbitration policy.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Beverley Martin

Subscribed and sworn to before me this ___10th___ day of January, 2008.

_____
Notary Public
GAIL M. SPENCE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires May 14, 2010

My Commission expires:

4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BEVERLEY MARTIN,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 07-2297 (RCL)** |
| | ) | |
| **CITIBANK, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DECLARATION OF LINDA M. CORREIA

I, Linda M. Correia, affirm that our law firm had ongoing technical problems interfering with access to the Internet and, specifically, access to this Court's ECF system, over the course of the past 24 hours. The problems seemed to have been corrected until I attempted to file Plaintiff Martin's Opposition to Dismiss and to Compel Arbitration, at which time I was able to access the ECF system through a non-network computer, but was not able to transfer the pleading and related exhibits to the non-network computer for filing. Accordingly, I have filed the Opposition as expeditiously as I was able under the circumstances. I submit that the defendant has not suffered any prejudice as a result of this inconvenience.

Respectfully Submitted,


 */s/  Linda M. Correia*
Linda M. Correia #43527
Webster, Fredrickson, Henricksen,
Correia & Puth, PLLC
1775 K Street, N.W., Suite 600
Washington, D.C.  20006
(202) 659-8510
Attorney for Plaintiff Martin

**CERTIFICATE OF SERVICE**

I certify that on this 11th day of January, 2008, a copy of the foregoing Declaration of Linda M. Correia was mailed, by first class mail, postage prepaid, to:

Paul J. Kennedy
Katherine A. Goetzl
Littler Mendelson, P.C.
1150 17th St. N.W.
Suite 900
Washington, D.C. 20036

*/s/  **Linda M. Correia***
Linda M. Correia #43527
1775 K Street, N.W., Suite 600
Washington, D.C.  20006
(202) 659-8510

Attorney for Plaintiff Martin

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  | ) |  |
|---|---|---|
| **BEVERLEY MARTIN,** | ) |  |
|  | ) |  |
| **Plaintiff** | ) |  |
|  | ) |  |
| v. | ) | **Civil Action No. 07-2297 (RCL)** |
|  | ) |  |
| **CITIBANK, INC.,** | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |

_____ )

**ORDER**

Upon consideration of Defendant's Motion to Dismiss and to Compel Arbitration, the

Plaintiff's Opposition thereto, and the entire record herein, it is this ____ day of _____,

2008,

ORDERED that the Defendant's motion shall be, and the same hereby is, DENIED in its

entirety.

_____                                        _____

Date                                                                 The Honorable Royce C. Lamberth