## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BEVERLEY MARTIN,

        Plaintiff,

        v.

CITIBANK, N.A.,[1]

        Defendant.

Civil Action No. 07-2297  (RCL)

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
### TO DEFENDANT'S MOTION TO DISMISS AND TO COMPEL ARBITRATION

## I.      INTRODUCTION

Pursuant to Rule 7(d) of the Local Civil Rules of the U.S. District Court for the District of Columbia, Defendant Citibank, N.A. ("Citibank" or "Company") submits this Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss and to Compel Arbitration.  Contrary to the assertions in her Opposition, Plaintiff has failed to show that Citibank waived its right to compel arbitration, that there is no binding obligation to arbitrate, or that the arbitration agreement is unenforceable.  Under these circumstances, Citibank requests that the Court grant Defendant's Motion and compel Plaintiff to arbitrate her claims against the Company.

## II.      ARGUMENT

### A.    Citibank Did Not Waive Its Right To Compel Arbitration.

Plaintiff contends that Citibank has waived its right to compel arbitration by removing this case from the D.C. Superior Court to this Court, and by not moving to compel arbitration

---

[1] Defendant is incorrectly identified in Plaintiff's Complaint as Citibank, Inc.

until after the statutes of limitations on Plaintiff's claims had run.  Opposition, pp. 3-9.  Both of Plaintiff's contentions are incorrect.

## 1.     Removal Of A Case Does Not Waive The Right To Arbitration.

Plaintiff is correct that Citibank removed this case to this Court before it moved to compel arbitration, but is flat wrong that it waived the right to arbitrate in so doing.

This Court's decision in <u>Khan v. Parsons Global Services, Ltd.</u>, 480 F. Supp. 2d 327, 333 (D.D.C. 2007) disposes of Plaintiff's argument.    There, as here, the defendant-employer removed the case and then move to dismiss or compel arbitration.  Nonetheless, this Court ruled that removal did not waive the right to compel arbitration because the defendant did not actively participate in the lawsuit, pointing to several facts to support that conclusion.  <u>Id.</u> at 334. First, the employer engaged in no discovery before moving to compel arbitration.  <u>Id.</u>  Second, the employer did not delay in invoking arbitration in the case.  <u>Id.</u>  Third, the employer had requested in writing that the employee submit his claims to arbitration one week before filing its motion to dismiss or for summary judgment or to compel arbitration.  <u>Id.</u>  Fourth, the employer's motion did not dispute the employee's claims on the merits.  <u>Id.</u>  Fifth, the employee would not be prejudiced by submitting his claims to arbitration because the employer had not caused substantial expense or loss of time by invoking the litigation process instead of demanding arbitration.  <u>Id.</u> at 335.

Citibank, like the employer in <u>Parsons Global Services</u>, has not actively participated in this lawsuit and thus has not waived its right to compel arbitration for several reasons.  First, Citibank conducted no discovery before moving to compel arbitration.  Second, Citibank did not delay in invoking arbitration in the case, instead promptly removing the case and then immediately moving to dismiss and compel arbitration.  In fact, Citibank conveyed to Plaintiff its

desire to arbitrate this matter more than two weeks before filing its motion to dismiss and to compel arbitration – even more promptly than the employer in Parsons Global Services. See Email from Paul Kennedy to Linda Correia dated December 10, 2007, Exhibit 6 to Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and to Compel Arbitration. Third, Citibank's motion to dismiss and to compel arbitration does not dispute Plaintiff's claims on the merits. Finally, there is no prejudice to Plaintiff because Citibank has not caused substantial expense or loss of time by invoking the litigation process instead of demanding arbitration.

A party waiving arbitration must act inconsistently with the right to arbitrate. National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc., 821 F.2d 772, 774 (D.C. Cir. 1987) illustrates the point. In that case, the Court, looking to the totality of the circumstances, held that the party seeking arbitration – A.G. Edwards – had acted inconsistently with the arbitration right by taking multiple steps to advance the litigation. Id. at 778. Specifically, A.G. Edwards had filed an answer which did not mention arbitration, received numerous documents from the plaintiff in discovery, taken seven depositions, defended several depositions, opposed the plaintiff's motion to amend the complaint, filed an answer to the amended complaint (again without mentioning arbitration), moved for summary judgment on the merits, engaged in settlement negotiations, and agreed to set the case for trial. Id. at 775. The Court stated that A.G. Edwards chose to have the substance of the claims decided by the district court and that its "election was wholly inconsistent with an intent to arbitrate and constituted an abandonment of the right to seek arbitration." Id. at 776; see also Cornell & Co. v. Barber & Ross Co., 360 F.2d 512 (D.C. Cir. 1966) (finding waiver of arbitration right where defendant moved to transfer venue, filed answer, filed counterclaim, and engaged in discovery including depositions and

document production).  Citibank has engaged in none of the activities that led the Court to conclude that A.G. Edwards waived arbitration.

Similarly, in <u>Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.</u>, the defendant engaged in substantial discovery including receiving 2,000 documents in discovery before moving to compel arbitration.  50 F.3d 388, 389 (7th Cir. 1995).  Noting that the defendant waited 10 months after the case was filed before moving to compel arbitration, the U.S. Court of Appeals for the Seventh Circuit affirmed the district court's denial of the motion.  <u>Id.</u>  The defendant had waived its right to compel arbitration because its actions indicated that it was waiting to see how the case was fairing in federal court before deciding to demand arbitration. <u>Id.</u> at 391.  Again, Citibank has engaged in none of the activities that led the <u>Cabinetree of Wisconsin, Inc.</u> court to rule that arbitration had been waived.

Thus, Plaintiff's lone contention that Citibank somehow waived arbitration by removing the case to this Court simply cannot stand.  Citibank has not elected to pursue the resolution of this matter in this Court, but instead, seeks to have this Court decide whether this case is subject to arbitration.  In no way has Citibank acted inconsistently with the arbitration right by actively participating in this case, as <u>National Foundation for Cancer Research</u> and <u>Cabinetree of Wisconsin, Inc.</u> plainly demonstrate.  Citibank, therefore, submits the Court should find that Citibank has not waived its right to demand arbitration.

### 2.    Citibank's Motion To Compel Arbitration Is Timely.[2]

Plaintiff is correct that Citibank's Employment Arbitration Policy states that "[a]ny proceeding under this procedure must be brought within the time period provided for within the statute(s) of limitations applicable to the claims asserted by the claimant."  <u>See</u> Employment

---

[2] As discussed above, Citibank promptly moved to compel arbitration after removing this case to this Court.

Arbitration Policy, ¶ 26, Appendix C to Exhibit 3 to Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and to Compel Arbitration.  However, Plaintiff is incorrect that Citibank's motion to compel arbitration is untimely.

Plaintiff's argument fails because Citibank is not bringing any proceeding under the Employment Arbitration Policy.  Citibank has filed its Motion to Dismiss and to Compel Arbitration pursuant to the Federal Arbitration Act to enforce Plaintiff's agreement to abide by the Employment Arbitration Policy.  It cannot be disputed that it is Plaintiff who is the claimant in this proceeding and that it is Plaintiff who is asserting claims against Citibank.  Moreover, assuming that Citibank's Motion is granted, it is Plaintiff who will have to initiate the arbitration proceeding because it is Plaintiff who has a dispute with the Company.[3]  See Employment Arbitration Policy, ¶ 1.

Likewise, Citibank's alleged knowledge of Plaintiff's dispute with the Company does not shift the burden of initiating arbitration to Citibank as Plaintiff asserts in her Opposition. Opposition, p. 7.  Notably, Plaintiff cites no case law to support her assertion.  Citibank is not pursuing any claims against Plaintiff and thus was under no obligation to initiate arbitration proceedings against Plaintiff.  From Citibank's perspective, there was no arbitrable dispute until Plaintiff filed her lawsuit.  As soon as Citibank learned that an arbitrable dispute existed, it acted promptly to move that dispute to the forum the parties agreed was proper.

Nor does Citibank's participation in the EEOC process without mentioning the Employment Arbitration Policy indicate any intent by the Company to waive the right to arbitrate.  Again, Plaintiff cites no case law to support this argument.  This omission is likely because this Court has already rejected the argument.  In Hughes v. CACI, Inc., this Court

---

[3] Plaintiff's misguided reading of the provision would lead to absurd results.  For example, any employee could avoid her obligation to arbitrate by waiting until the last day of the statute of limitations to file her

specifically rejected the plaintiff-employee's assertion that the employer's failure to raise the right to arbitration during the EEOC process waived the right to arbitration. 384 F. Supp. 2d 89, 99 (D.D.C. 2005). The Court reached that conclusion for two reasons. First, the employee's right to file a discrimination complaint with the EEOC is separate from his contractual agreement to arbitrate. Id. Second, the agreement to arbitrate is not binding upon the EEOC. Id. Accordingly, the Court looked to the employer's actions in the judicial proceedings, not the administrative proceedings, when it determined that the employer had not waived the right to arbitrate. Id. (quoting Brennan v. King, 139 F.3d 258, 264 (1st Cir. 1998)).

It cannot be disputed that Plaintiff is the claimant in this matter and Plaintiff should have made a timely demand for arbitration of her claims. However, Plaintiff's failure to abide by her contractual obligations certainly does not translate into Citibank's waiving of its right to arbitrate.

### B. Citibank And Plaintiff Entered Into A Binding Arbitration Agreement.[4]

Plaintiff makes three arguments to support her contention that she is under no obligation to arbitrate her claims against Citibank. First, Plaintiff claims that she never received the Employee Handbook[5] and the Employment Arbitration Policy.[6] Second, Plaintiff claims that the Employment Arbitration Policy is not a binding contract. Third, Plaintiff claims that she is excused from complying with her obligation to arbitrate due to the existence of special circumstances. As discussed below, none of these arguments withstands scrutiny.

---

claims and then asserting that Citibank's Motion to Compel Arbitration was untimely.

[4] Plaintiff does not dispute that her claims are covered by the Employment Arbitration Policy.

[5] The Employee Handbook is Exhibit 3 to the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and to Compel Arbitration.

[6] The Employment Arbitration Policy which Plaintiff agreed to comply with in 2001 is Exhibit 2 to the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and to Compel Arbitration. The Employment Arbitration Policy which Plaintiff agreed to comply with in 2002 is Appendix C to Exhibit 3 to the Memorandum of Points and Authorities in Support of Defendant's Motion

1.    **Plaintiff Had Ample Opportunity To Review The Employment Arbitration Policy.**

Plaintiff argues that "she never received a copy of the Employee Handbook, despite numerous requests for a copy." Opposition, p. 9. However, Plaintiff's argument must fail because she had ample opportunity to review both the Employee Handbook and the Employment Arbitration Policy contained therein. Citibank's Employee Handbooks and Employment Arbitration Policy are available to all employees through the Company's intranet and have been since at least June 2004. Declaration of Eric Johnston ("Johnston Dec."), ¶ 5, attached hereto as Exhibit 1. Therefore, Plaintiff's allegations about the unavailability of the Handbook and the Policy to her are simply disingenuous. In fact, from 2000 to 2003, when Plaintiff was a Client Services Manager and a Financial Center Operations Manager, it was one of her job duties to distribute Employee Handbooks to her subordinates. Johnston Dec. ¶ 4. Plaintiff was also charged with ensuring that each of her subordinates returned a signed Employee Handbook Receipt Form - like the one she signed on August 8, 2002 - to her and that those signed Receipt Forms were forwarded to Human Resources. Id.

The stark truth is that Plaintiff has had years to review the Company's Employee Handbooks and Employment Arbitration Policy, and to withdraw her agreement to comply with the Policy if she disagreed with its provisions. The fact that she appears not to have done the former, and certainly did not do the latter, is no fault of Citibank's. Plaintiff's failure to take advantage of the resources available to her on a daily basis provides no reason for the Court to refuse enforcement of the Employment Arbitration Policy. Williams v. Walker Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965) (party should be bound when afforded opportunity to read the agreement before signing it); Paterson v. Reeves, 304 F.2d 950, 951

---

to Dismiss and to Compel Arbitration.

(D.C. Cir. 1962) ("One who signs a contract which he had an opportunity to read and understand is bound by its provisions.").

### 2.    The Employment Arbitration Policy Is A Binding Contract.

Plaintiff does not dispute that she signed the Acknowledgment on September 26, 2001[7] and the 2002 Employee Handbook Receipt Form on August 8, 2002.[8]  Nor does Plaintiff dispute that the 2002 Employee Handbook contains Citibank's Employment Arbitration Policy.  Instead, Plaintiff argues that she never agreed to be bound by the Employment Arbitration Policy.[9]  Opposition, pp. 10-12.  Plaintiff is incorrect.

In the District of Columbia, a person who signs a contract that she has had the opportunity to read and understand is bound by its provisions.  Paterson, 304 F.2d at 951.  Moreover, having signed a document, the signing party is presumed to know and assent to its contents.  Booker v. Robert Half International, Inc., 315 F. Supp. 2d 94, 100 (D.D.C. 2004).  As the District of Columbia Circuit stated in Bailey v. Federal National Mortgage Association, the question is whether Plaintiff did something to indicate that she intended to enter into an agreement with Citibank to bind herself to arbitrate employment-related claims.  209 F.3d 740, 746 (D.C. Cir. 2000) (refusing to enforce arbitration agreement where employee filed claim before agreement was implemented and affirmatively and repeatedly disavowed agreement).  The answer to that question in this case is a resounding "yes."

---

[7] The Acknowledgment signed by Plaintiff is Exhibit 1 to the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and to Compel Arbitration.

[8] The Receipt Form signed by Plaintiff is Exhibit 4 to the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and to Compel Arbitration.

[9] Perhaps recognizing the lack of authority from this jurisdiction to support her position, Plaintiff ranges far and wide to cite cases from the U.S. Court of Appeals for the Ninth Circuit, the U.S. District Court for the District of Colorado, and the U.S. District Court for the Middle District of Louisiana in support of this argument.

First, the first page of the Acknowledgment[10] which Plaintiff admittedly signed states in pertinent part:

> Effective immediately, [Citibank] is implementing a new Dispute Resolution Policy and Employment Arbitration Policy. The full Dispute Resolution Policy ("DRP") and Employment Arbitration Policy ("Arbitration Policy") are attached to this memorandum. ***You are urged to read each of these in its entirety.***
>
> Pursuant to the Arbitration Policy, you and the Company agree to make arbitration the required and exclusive forum for resolution of all employment-related disputes that are based on legally protected rights. ... ***Your continued employment will constitute acceptance of the Arbitration Policy.***

Memorandum from Jim Duffy to U.S. Consumer Group Employees re Dispute Resolution Policy and Employment Arbitration Policy dated September 1, 2001 ("Duffy Memo"), attached hereto as Exhibit 2 (emphasis in original).

Contrary to Plaintiff's claims, she explicitly "agree[d] to make arbitration the required and exclusive forum for resolution of all employment-related disputes that are based on legally protected rights" when she signed the Acknowledgment on September 26, 2001. Id. Having signed the Acknowledgment,[11] Plaintiff is bound by its provisions, including the provision whereby she agreed to submit all employment-related disputes to arbitration. Paterson, 304 F.2d at 951. Moreover, Plaintiff's signature on the Acknowledgment creates a presumption that she knew and assented to its contents, including the provision whereby she agreed to submit all employment-related disputes to arbitration. Booker, 315 F. Supp. 2d at 100.

As this Court ruled in Hughes, a contract is an agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law. 384 F. Supp. 2d at 97.

---

[10] Citibank did not locate page one of this document until January 17, 2008 so it was not included in Exhibit 1 to the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and to Compel Arbitration. Counsel for Citibank provided a copy of the document to counsel for Plaintiff on January 18, 2008.

[11] Not only did Plaintiff accept the Employment Arbitration Policy by signing the Acknowledgement, but also by continuing her employment as stated in bold italics in the Acknowledgment.

In enforcing the arbitration agreement, the <u>Hughes</u> Court ruled that the document signed by the employee was a valid, enforceable contract because it imposed obligations on the employer and the employee and thus bound both parties to its terms.    <u>Id.</u>    Similarly, in this case, the Employment Arbitration Policy imposes obligations on both Plaintiff and Citibank.    Specifically, the Policy provides that "[employee] *and the Company* agree to make arbitration the required and exclusive forum for resolution of all employment-related disputes that are based on legally protected rights."    Duffy Memo (emphasis added).    It cannot be disputed that Plaintiff by her signature on the Acknowledgment agreed to be bound by the Employment Arbitration Policy. <u>See</u> <u>Ip v. Citibank, N.A.</u>, 05 Civ 2264 (BSJ) (S.D.N.Y. Mar. 30, 2006) (enforcing Citibank's arbitration agreement where employee signed same Acknowledgement as Plaintiff in this case) (attached hereto as Exhibit 3).

> Second, the Receipt Form which Plaintiff admittedly signed states, in pertinent part:
>
> I have received the Company's *Employee Handbook* and, in consideration of my continued at-will employment by the Company, I will comply with it and all of the Policies and Procedures of the Company.    I have read this *Handbook* carefully, and I understand that I should contact my manager or Human Resources representative with any questions.
>
> I understand that except for the Employment Arbitration Policy, nothing contained in this *Handbook* (nor the *Handbook* itself) is considered a contract of employment...
>
> **Important:**  I understand that this *Handbook* contains a provision that requires me to submit employment-related disputes to binding arbitration (see Appendix). I have read that provision carefully.    I understand that no provision in this *Handbook* or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.

Exhibit 4 to the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and to Compel Arbitration (emphasis in original).

By signing the Receipt Form, Plaintiff unconditionally agreed without exception to comply with all of Citibank's policies including the Employment Arbitration Policy. Id. In addition, Plaintiff affirmatively acknowledged her understanding that the Employment Arbitration Policy is a contract. Id. Furthermore, the Receipt Form notified Plaintiff in plain language and with the bold printed word "Important" that her signature would indicate her understanding that she was required "to submit employment-related disputes to binding arbitration." Id.

It cannot be seriously disputed that Plaintiff agreed to be bound by Citibank's Employment Arbitration Policy when she signed the Employee Handbook Receipt Form. See Jenkins v. CitiFinancial, Inc., C.A. No. 2:05-1199-PMD-GCK (D.S.C. Jan. 16, 2007) (enforcing Citibank's arbitration agreement in Employee Handbook where employee signed Employee Handbook Receipt Form nearly identical to one signed by Plaintiff in this case) (attached hereto as Exhibit 4); Chanchani v. Salomon/Smith Barney, Inc., No. 99 CIV 9219 RCC, 2001 WL 204214 (S.D.N.Y. Mar. 1, 2001) (enforcing arbitration agreement contained in employee handbook where employees signed receipts affirming that they received and reviewed handbook and agreed to comply with all policies and procedures) (attached hereto as Exhibit 5).

### 3.    No Special Circumstances Exist.

Plaintiff argues that she should be excused from complying with the Employment Arbitration Policy, despite having signed the Policy, because of: (1) Citibank's failure to explain the Policy to her; (2) her lack of education and experience; (3) her fear of losing her job; and (4) Citibank's refusal to allow her to see the Employee Handbook. Plaintiff is correct that a party can be relieved of contractual obligations if she can show the existence of special circumstances. Sapiro v. VeriSign, 310 F. Supp. 2d 208, 212 (D.D.C. 2004); Emeronye v. CACI International,

Inc., 141 F. Supp. 2d 82, 86 (D.D.C. 2001).  However, as shown below, none of Plaintiff's excuses satisfy that standard.

First, this Court has repeatedly held that an employer's alleged failure to explain an arbitration agreement to an employee does not render the agreement unenforceable.  Booker, 315 F. Supp. 2d at 100 (enforcing arbitration agreement where employee claimed among other things that agreement was not explained to him); Brown v. Dorsey & Whitney, LLP, 267 F. Supp. 2d 61, 79-80 (D.D.C. 2003) (employer has no affirmative obligation to ensure employee read arbitration agreement or to explain agreement to her); Emeronye, 141 F. Supp. 2d at 86 (enforcing arbitration agreement where employee claimed she did not recall signing agreement, discussing agreement with employer, reading the agreement, receiving a copy of the agreement, or agreeing to arbitration).

Second, Plaintiff claims that she was not familiar with EEOC proceedings or civil rights laws.  Opposition, p. 13, n. 6.  Plaintiff is correct that it is appropriate for the Court to consider Plaintiff's education and experience in deciding whether a party agreed to arbitration.  Dorsey & Whitney, 267 F. Supp. 2d at 82-83.  However, it is entirely inappropriate and misleading for Plaintiff to attempt to portray herself as uneducated and inexperienced.  Plaintiff is a high school graduate who took business and accounting classes at three colleges between 1975 and 1984.  Plaintiff's Employment Application, p. 1, attached hereto as Exhibit 6.  In addition, in the 13 years before she applied to work at Citibank, Plaintiff worked continuously at four American banks and financial companies in Virginia, Texas, Germany, and England.  Plaintiff's Employment Application, p. 2.  Plaintiff's education and experience show that she was fully aware of the implications of agreeing to arbitrate disputes with Citibank.

Third, Plaintiff claims that she signed the 2001 Acknowledgement out of fear for losing her job.  Opposition, pp. 10, 13.  Significantly, she makes no similar claim with respect to signing the 2002 Employee Handbook Receipt Form.  Therefore, Plaintiff cannot be excused from her obligation to arbitrate based on alleged fear of unemployment.  Booker, 315 F. Supp. 2d at 102 (enforcing arbitration agreement where there was no evidence that employee was compelled to sign arbitration agreement because he feared becoming unemployed if he decided not to); Dorsey & Whitney, 267 F. Supp. 2d at 74 (same).

Lastly, as discussed in detail above in Section II.B.1., Plaintiff has had years of employment with Citibank to review the Employee Handbook and the Employment Arbitration Policy, but chose of her own accord not to do so.  Booker, 315 F. Supp. 2d at 101 (employee's failure to read or understand arbitration agreement simply does not constitute special circumstances); Dorsey & Whitney, 267 F. Supp. 2d at 74-75 (employee's failure to exercise opportunity to review arbitration policy was error in judgment that could not be blamed on employer).

No special circumstances exist in this case that would justify relieving Plaintiff of her obligations pursuant to the Employment Arbitration Policy.

**C.    The Arbitration Agreement Is Not An Adhesion Contract.**

Plaintiff argues that the Employment Arbitration Policy is an unconscionable contract of adhesion.  However, to establish unconscionability, Plaintiff must prove both that she lacked a meaningful choice and that the terms of the agreement are unreasonably favorable to Citibank. Smith, Bucklin & Assoc., Inc. v. Sonntag, 83 F.3d 476, 480 (D.C. Cir. 1996).  Plaintiff's argument fails because she cannot prove either element of unconscionability.

### 1.     Plaintiff Had A Meaningful Choice.

Plaintiff claims she lacked a meaningful choice in signing the Employment Arbitration Policy because Citibank prevented her from seeing the Policy and conditioned her continued employment on agreeing to the Policy.  Opposition, pp. 16-17.  Both of these assertions are contradicted by the evidence in this case.

This Court has refused to hold that a plaintiff has been deprived of a meaningful choice where the plaintiff has had a fair opportunity to understand the terms of the arbitration agreement and was not compelled to sign the agreement out of fear of unemployment.  Booker, 315 F. Supp. 2d at 102; Dorsey & Whitney, 267 F. Supp. 2d at 74; Nur v. K.F.C. USA, Inc., 142 F. Supp. 2d 48, 51 (D.D.C. 2001).  As discussed in detail above in Section II.B.1., Plaintiff has had years of employment with Citibank to review the Employee Handbook and the Employment Arbitration Policy.  Likewise, as discussed above in Section II.B.3., Plaintiff has no evidence that she signed the 2002 Employee Handbook Receipt Form out of fear for losing her job at Citibank.

Plaintiff simply cannot show that she had no meaningful choice about agreeing to the Employment Arbitration Policy.

### 2.     The Agreement's Terms Do Not Unreasonably Favor Citibank.

Plaintiff argues that several of the terms of the Employment Arbitration Policy unreasonably favor Citibank and thus do not provide her with an adequate forum to vindicate her rights.  Opposition, pp. 17-21.  The District of Columbia Circuit has ruled that arbitration can be required if the following factors are met by the arbitration policy:  (1) provides for neutral arbitrators; (2) provides for more than minimal discovery; (3) requires a written award; (4) provides for all types of relief that would otherwise be available in court; and (5) does not require the employee to pay either unreasonable costs or any arbitrators' fees or expenses as a

condition of access to the arbitration forum. <u>Cole v. Burns Int'l Sec. Servs.</u>, 105 F.3d 1465, 1482 (D.C. Cir. 1997). Contrary to Plaintiff's contention, then, Citibank's Employment Arbitration Policy meets all of the requirements set forth for arbitration by the <u>Cole</u> Court. In fact, the Policy terms are fair[12] and do not favor either party.

### a.    The Punitive Damages Provision Can Be Severed.

Plaintiff claims the Employment Arbitration Policy is unenforceable because she would not be permitted to recover punitive damages on her negligent supervision claim.[13] Opposition, p. 19. As a preliminary matter, in the District of Columbia, a plaintiff cannot recover punitive damages on a negligent supervision claim. <u>Hackett v. Washington Metropolitan Area Transit Authority</u>, 736 F. Supp. 8, 10-11 (D.D.C. 1990); <u>Daka, Inc. v. McCrae</u>, 839 A.2d 682, 701 n.24 (D.C. 2003) (negligence is a degree of culpability ordinarily insufficient to support punitive damages). Regardless, even if Plaintiff were bringing a claim for which the Policy purported not to allow recovery of all available damages, Citibank would agree to waive that particular provision. The Court could then sever the provision from the Policy and enforce the Policy. <u>Booker</u>, 315 F. Supp. 2d at 106; <u>Dorsey & Whitney</u>, 267 F. Supp. 2d at 77.

### b.    The Provisions Of The Policy Are Not One-Sided.

Plaintiff argues that her procedural rights are cut short by the Policy. Opposition, p. 19. However, Plaintiff's argument fails because she either misinterprets or takes out of context the provisions at issue.

First, Plaintiff incorrectly claims that Citibank is not required to institute arbitration at all, let alone within the applicable statute of limitations. Opposition, p. 18. In fact, the Policy does

---

[12] In fact, some of the terms of the Policy are more favorable to Plaintiff than if she were proceeding in court. For example, Citibank pays the entire filing fee for an arbitration. Employment Arbitration Policy, ¶ 24. If Plaintiff were pursuing her claims in court, she would have to pay the filing fee.

[13] Plaintiff does not argue that her remedies under Title VII or the D.C. Human Rights Act are unfairly

not exempt Citibank from instituting arbitration when it is pursuing claims.  The Policy states that Citibank is not required to institute arbitration *before taking disciplinary action of any kind, including termination*.  Employment Arbitration Policy, Scope of Policy (emphasis added).  Nor does the Policy exempt Citibank from complying with any applicable statute of limitations.  According to the Policy, all proceedings must be brought within the statute of limitations for the asserted claim with no distinction made as to whether it is Citibank or an employee bringing the claim.  Employment Arbitration Policy, ¶ 26.

Second, Plaintiff argues that the requirement that an employee appeal a termination decision under the Dispute Resolution Policy ("DRP") within 30 days shortens the statute of limitations for the employee.  Opposition, p. 18.  Citibank is not aware of there being any statute of limitations applicable to an employee's internal appeal of a termination decision.  Nor does Plaintiff identify any applicable statute of limitations which the DRP allegedly truncates.  Regardless, since use of the DRP is not a mandatory prerequisite to filing a claim pursuant to the Employment Arbitration Policy, any deadline in the DRP would not cut short any applicable statute of limitations.  Employment Arbitration Policy, ¶ 26 ("Any proceeding under this procedure must be brought within the time period provided for within the statute(s) of limitations applicable to the claims asserted by the claimant.").

Third, Plaintiff argues that the Policy unfairly requires the employee to name all witnesses in her demand for arbitration.  Opposition, p. 18.  This is simply not true.  In reality, the Policy requires the employee to include "the alleged act or omission at issue; *the names of all persons involved in the dispute*; the amount in controversy, if any; and the remedy sought." Employment Arbitration Policy, ¶ 1 (emphasis added).  These requirements are no greater than those for pleadings in Federal Rule of Civil Procedure 8.  Fed. R. Civ. P. 8.  Moreover, there is

restricted.

no provision in the Policy precluding testimony at the arbitration by a person whose name is not included in the arbitration demand.  Notably, this is not a case like <u>Hooters of America, Inc. v. Phillips</u>, 39 F. Supp. 2d 582, 601-02 (D.S.C. 1998), where the arbitration policy required the employee to disclose the identity, address, and summary of the testimony of witnesses before filing a claim, but imposed no reciprocal obligation on the employer.

Fourth, Plaintiff fails to explain her allegation that the discovery limitations in the Policy are one-sided.  Opposition, p. 18.  In fact, they are not.  <u>Cole</u>, 105 F.3d at 1480-82 (acknowledging that AAA rules provide for meaningful and sufficient discovery); <u>Sapiro</u>, 310 F. Supp. 2d at 214 (same).  *Both parties* are limited to one set of interrogatories and one set of document requests.  Employment Arbitration Policy, ¶ 12.  Moreover, as Plaintiff acknowledges, a party who wants to conduct additional discovery can request that the arbitrator permit further discovery.  <u>Id.</u>  Citibank fails to see how discovery limitations which are imposed on both parties are unfair or one-sided.  Again, this is not a case like <u>Phillips</u> where the arbitration policy limited the employee to one deposition unless she could show a substantial and demonstrable need to take more depositions.  39 F. Supp. 2d at 601.

Finally, Plaintiff argues that it is unfair to permit the arbitrator to consider evidence of witnesses by affidavit.  Opposition, pp. 18-19.  Again, Citibank fails to see how this provision is one-sided as Plaintiff alleges.  Plaintiff contends that she would be unable to cross-examine witnesses who testify by affidavit.  However, the same constraint extends to Citibank for any witness Plaintiff presents by affidavit.  In addition, Plaintiff's claims of inaccessibility to Citibank employees are greatly exaggerated.  As a current employee, Plaintiff has access to employees.  Moreover, Plaintiff concedes – as she must – that she can request subpoenas from

the arbitrator.  Citibank fails to see how this provision of the Policy varies at all from the procedural rules which would apply in any judicial forum.

### c.    There Is A Mutual Obligation To Arbitrate.

Plaintiff argues that the Policy is unconscionable because there is no mutuality of obligation to arbitrate.[14]  Opposition, pp. 20-21.  However, as discussed above, Plaintiff's reading of the Policy is wrong.  Citibank is obligated to arbitrate any claims that it may bring against Plaintiff, just as Plaintiff is obligated to arbitrate claims she brings against the Company.[15]

Plaintiff's claim that the Policy is unconscionable because Citibank can modify the Policy is equally unavailing.  First, the Policy requires that Citibank provide 30 days advance notice to employees of any amendments to the Policy.  Employment Arbitration Policy, ¶ 27.  Thus, there is no arguably unfair retroactive application of amendments.  Second, other courts have ruled that the modification provision in Citibank's Employment Arbitration Policy and similar modification provisions are not unconscionable.  See, e.g., Blair v. Scott Specialty Gases, 283 F. 3d 595, 604 (3d Cir. 2002); Tripp v. Citicorp Credit Services, Inc., Case No. 04-0497-CV-W-FJG (W.D. Mo. May 24, 2005) (attached hereto as Exhibit 7).

### III.    CONCLUSION

For the foregoing reasons and the reasons stated in its opening brief, Defendant Citibank, Inc. respectfully requests that the Court grant its Motion to Dismiss and to Compel Arbitration.

---

[14] Lacking more applicable authority, Plaintiff cites cases from the U.S. Court of Appeals for the Ninth Circuit, the U.S. District Court for the District of Colorado, the U.S. District Court for the Eastern District of Pennsylvania, and the California Supreme Court in support of this argument.

[15] This Court has ruled that mutual agreements to arbitrate are sufficient consideration for an arbitration agreement.  Sapiro, 310 F. Supp. 2d at 214.

Dated:  January 24, 2008          Respectfully submitted,

LITTLER MENDELSON, P.C.

By:    /s/ Katherine A. Goetzl
        Paul J. Kennedy (D.C. Bar No. 428623)
        Katherine A. Goetzl (D.C. Bar No. 457660)
        1150 17th Street N.W., Suite 900
        Washington, DC  20036
        202.842.3400  telephone
        202.842.0011  facsimile

        Counsel for Defendant Citibank, N.A.

Firmwide:84092914.1 022839.1034

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BEVERLEY MARTIN,**

      **Plaintiff,**

      **v.**

**CITIBANK, INC.,**

      **Defendant.**

**Civil Action No. 07-2297 (RCL)**

## DECLARATION OF ERIC JOHNSTON

I, Eric Johnston, hereby declare as follows:

1.     I am over eighteen years of age and am competent to give testimony.

2.     I am employed by Citibank as a Senior Human Resources Generalist. I have held that position since June 2004. As Senior Human Resources Generalist, I support Citibank's operations in the District of Columbia, Maryland, and Virginia.

3.     As Senior Human Resources Generalist, I have custody and control over Beverley Martin's personnel file. I recently reviewed the contents of Ms. Martin's personnel file.

4.     Ms. Martin was employed by Citibank as a Client Services Manager from approximately August 2000 to February 2001, and as a Financial Center Operations Manager from approximately February 2001 to September 2003. As Client Services Manager and as Financial Center Operations Manager, Ms. Martin's job duties included distributing Employee Handbooks and employment-related policies to her subordinates. Ms. Martin was also responsible for ensuring that each of her subordinates returned a signed Employee Handbook Receipt Form to her and that those signed Receipt Forms were forwarded to Human Resources.

5.      Citibank's Employee Handbooks, including the 2002 Employee Handbook, and Citibank's Employment Arbitration Policy are available to all employees through the Company's intranet. Citibank's intranet is accessible by any employee using his or her personal login information. The Employee Handbooks and the Employment Arbitration Policy have been available on Citibank's intranet since I started working for Citibank in June 2004.

6.      I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 24, 2008

Eric Johnston

Firmwide:84069624.1 022839.1034

# EXHIBIT 2

Date:   September 1, 2001

To:     U. S. Consumer Group Employees

From:   Jim Duffy, Senior Human Resources Officer

Re:     ***Dispute Resolution Policy and Employment Arbitration Policy***

---

Effective immediately, the U. S. Consumer Group (except Citifinancial, Primerica Financial Services and Travelers Insurance, including Travelers Property Casualty and Travelers Life and Annuity[1]) is implementing a new Dispute Resolution Policy and Employment Arbitration Policy. The full Dispute Resolution Policy ("DRP") and Employment Arbitration Policy ("Arbitration Policy") are attached to this memorandum. ***You are urged to read each of these in its entirety.***

As you will see, the DRP provides you with an impartial process to request resolution of any employment-related concern. First, you are encouraged to informally discuss any concerns you may have with your manager. It is our expectation that all employees will be candid about any employment concerns and raise them promptly with their manager or Human Resources representative. If this informal discussion is not successful, you can use the DRP. Except as to employees of Citifinancial, Primerica, Travelers Insurance, including Travelers Property Casualty and Travelers Life and Annuity, ***the DRP replaces and supercedes any other dispute resolution procedure, including any problem review process***.

In the unusual situation when the DRP does not fully resolve an employment-related dispute, you must request external binding arbitration in accordance with the Arbitration Policy if you wish to pursue the matter further.

Pursuant to the Arbitration Policy, you and the Company agree to make arbitration the required and exclusive forum for resolution of all employment-related disputes that are based on legally protected rights. Arbitration is an essential element of your employment relationship and a condition of employment. Please read the entire Arbitration Policy for full details about the types of claims that may be brought in arbitration and the entire process. ***Your continued employment will constitute acceptance of the Arbitration Policy.***

We believe that the DRP and Arbitration Policy are mutually advantageous for all employees and the Company and allows your employment concerns to be addressed through a full range of procedures.

These policies are effective as of the date of this memorandum. If you have any questions, please contact your Human Resources representative.

Please complete the attached Acknowledgment of Receipt form and return it to your manager by September 28, 2001. Please retain a copy for your file.

Attachments

---

[1]    Employees of Citifinancial, Primerica Financial Services and Travelers Insurance, including Travelers Property Casualty and Travelers Life and Annuity, have their own dispute resolution procedures and employment arbitration policies, which will continue to be applicable to employees in those businesses.

U. S. Consumer Group
*Dispute Resolution Policy and Employment Arbitration Policy*
Page 2

## Acknowledgment

I have received the U.S. Consumer Group Dispute Resolution and Employment Arbitration Policies.

Signature _____     Date _____

Name (please print) _____

Department _____

Business _____

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                                        :
CHUNG IP,                               :
                                        :
                    Plaintiff,          :
                                        :     05 Civ 2264 (BSJ)
            v.                          :
                                        :     **Order**
CITIBANK, N.A.,                         :
                                        :
                    Defendant.          :
                                        :
----------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Chung Ip ("Ip") brings this action under the Employees Polygraph Protection Act, 29 U.S.C. § 2001 et seq. ("EPPA"). Pursuant to FED. R. CIV. P. 12(b)(1) and (6), defendant Citibank, N.A. ("Citibank") moves for an Order dismissing or staying this action and compelling plaintiff to arbitrate his claim.

For the reasons stated herein, defendant's motion to compel arbitration and dismiss this action is GRANTED.

**Background**

Plaintiff Ip began working for defendant Citibank in December 2000, and was promoted to the position of Head Teller at its Chinatown Financial Center in June 2001. On September 10, 2001, Ip signed a document titled "Acknowledgment," which stated "I have received the U.S. Consumer Group Dispute Resolution and Employment Arbitration Policies."

Defendant's Employee Handbook, dated 2002, governs all employees in Citibank's U.S. Consumer Group, and contains an Arbitration Policy, which states in pertinent part:

> The Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual, or common law rights) that may arise between an employee or former employee and U.S. Consumer Group or its current and former officers, directors, employees, and agents ... without limitation ....

(Rubenstein Cert. Ex. C).  A cover memo distributed along with the Arbitration Policy provides,

> Pursuant to the Arbitration Policy, you and the Company agree to make arbitration the required and exclusive forum for resolution of all employment-related disputes that are based on legally protected rights.  Arbitration is an essential element of your employment relationship and a condition of employment ... *Your continued employment will constitute acceptance of the Arbitration Policy.*

(Rubenstein Cert. Ex. A) (emphasis in original).

Despite signing the Acknowledgment described above, plaintiff alleges in this lawsuit that he was never provided with a copy of the Arbitration Policy, the cover memo, or the Employee Handbook.

On April 27, 2003, Ip was counting cash from the previous day's bank teller transactions.  Ip alleges that, while verifying the amount of cash in one bag, he discovered that $4,900.00 was missing.  On or about May 21, 2003, Ip was instructed by a Citibank investigator to undergo a polygraph test, which he did.  On or about May 29, 2003, Citibank

- 2 -

terminated Ip on the basis of the results from the polygraph
test.  Ip alleges that this test was not administered properly,
and that his termination violates the EPPA.  Citibank moves to
compel arbitration under its Arbitration Policy and to dismiss
this complaint.

**Legal Standard**

When considering a motion to dismiss under Federal Rule of
Civil Procedure 12(b)(6) for "failure to state a claim upon
which relief can be granted," a district court must accept the
allegations contained in the complaint as true and draw all
reasonable inferences in favor of the non-moving party.
Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).  The
Court "may dismiss the complaint only if it appears beyond doubt
that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief."  Id. (citing Conley v.
Gibson, 355 U.S. 41, 45-46 (1957)).

**Discussion**

I.  Arbitration Under the Federal Arbitration Act

Defendant contends that plaintiff's claim is governed by
the Federal Arbitration Act ("FAA"), which Congress adopted to
ensure that courts would rigorously enforce private agreements
to arbitrate, and which "establishes an 'emphatic' national
policy favoring arbitration which is binding on all courts,
State and Federal."  Singer v. Jeffries & Co., 78 N.Y.2d 76, 81,

571 N.Y.S.2d 680 (1991) (citing, inter alia, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983)).  Written provisions to arbitrate controversies in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The party seeking to resist the enforcement of an arbitration agreement bears the burden of persuasion.  Marubeni America Corp. v. M/V "OHFU" her Engines, No. 94 Civ. 6251 (SAS), 1996 WL 84485 at *2 (S.D.N.Y. February 27, 1996).

In determining whether or not arbitration should be compelled under the FAA, courts assess three factors: (1) whether the parties agreed to arbitrate; (2) whether plaintiff's claims fall within the scope of the agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable.  Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987).[1]  The Court will examine these factors in reverse order.

First, there is no dispute between the parties that claims under the EPPA are arbitrable.  See Saari v. Smith Barney, Harrias Upham & Co., Inc., 968 F.2d 877, 880-82 (9th Cir. 1992), cert. denied, 506 U.S. 986 (1992).

---

[1] Under Genesco, a fourth step in the inquiry, not implicated here, is that if the court concludes that some, but not all, of a plaintiff's claims are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.  Genesco, 815 F.2d at 844.

Second, there is no dispute that plaintiff's EPPA claim falls within the scope of the Arbitration Policy. The Arbitration Policy expressly provides that it applies to "claims, demands or actions under ... any federal, state or local statute," and that arbitration is the "exclusive" forum for such disputes. (Rubenstien Cert. Ex. A). Furthermore, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp., 460 U.S. at 24-25. Accordingly, the Court finds that defendant's Arbitration Policy applies to claims such as plaintiff's EPPA claim.

However, there is a dispute with respect to the final remaining factor - whether or not the parties actually agreed to the Arbitration Policy. Plaintiff alleges that he never received the Arbitration Policy from defendant, or any other related documents besides the Authorization form described above, and argues that he therefore never intended to be bound by the terms of the Arbitration Policy.

Courts apply generally accepted principles of contract law to determine whether parties have agreed to arbitrate. See Thomson-CSF S.A. v. American Arbitration Ass'n., 64 F.3d 773, 776-77 (2d Cir.1995); Genesco, 815 F.2d at 845; Brennan v. Bally Total Fitness, 198 F.Supp.2d 377, 381 (S.D.N.Y. 2002); Chanchani v. Salomon/Smith Barney, Inc., No. 99 Civ. 9219, 2001 WL 204214,

at *2 (S.D.N.Y. Mar. 1, 2001).[2]  Under New York law, in the

absence of fraud or other wrongful act on the part of another

contracting party, a party "who signs or accepts a written

contract ... is conclusively presumed to know its contents and

to assent to them ...." Metzger v. Aetna Ins. Co., 227 N.Y. 411,

416, 125 N.E. 814 (1920); see Progressive Casualty Ins. Co. v.

C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 46 (2d

Cir.1993); Genesco, 815 F.2d at 845.

    Even taking plaintiff's allegations that he was not

provided with a copy of the Arbitration policy to be true, in

the absence of any allegations of fraud or duress,[3] the fact that

he signed the Acknowledgment and continued to work for Citibank,

which under the Arbitration Policy constitutes acceptance of it,

is dispositive.  See, e.g., Gold v. Deutsche Aktiengellschaft,

365 F.3d 144, 148-49 (2d Cir. 2004) (even if plaintiff was not

given by his employer documents regarding the relevant

arbitration policy, "the burden was upon [plaintiff] to have his

---

[2] District courts have applied traditional principles of state contract law to evaluate the validity of an agreement to arbitrate, even though the FAA is a federal statute.  Brennan, 198 F.Supp.2d at 381 n.6 (citing, inter alia, Arakawa v. Japan Network Group, 56 F.Supp.2d 349, 352 (S.D.N.Y. 1999) (applying New York law).

[3] Although plaintiff does not specifically allege that he was coerced into signing the Authorization, the Court notes that neither the allegation that he was hurried into signing the Authorization, nor any alleged inequality in bargaining power, suffice to render the arbitration agreement unenforceable. See Maye v. Smith Barney, Inc., 897 F.Supp. 100, 108 (S.D.N.Y. 1995) (the fact that plaintiffs were rushed by employers and did not have time to read arbitration agreement does not constitute fraud and will not serve to invalidate the agreement); Desiderio v. National Association of Securities dealers, Inc., 191 F.3d 198, 207 (2d Cir. 1999) (inequality in bargaining power is not sufficient to hold arbitration agreement unenforceable).

concerns addressed before signing"); Maye, 897 F.Supp. at 108.
Furthermore, after signing the Authorization, plaintiff
continued to work at Citibank for approximately a year and a
half, but plaintiff does not allege that during that time he
ever requested a copy of the Arbitration Policy or Employee
Handbook. Plaintiff may not now benefit by his own inaction in
claiming ignorance of the Arbitration Policy. Tarulli v.
Circuit City Stores, Inc., 333 F.Supp.2d 151, 158 (S.D.N.Y. 158)
(plaintiff's failure over several years to read arbitration
policy will not invalidate arbitration agreement).

The U.S. Consumer Group Employee Handbook and the
Arbitration Policy contained therein clearly apply to Citibank
employees such as plaintiff. The cover memo attached thereto
expressly states that "continued employment will constitute
acceptance of the Arbitration Policy." As plaintiff signed an
Acknowledgment indicating he received those materials, the Court
finds that the Arbitration Policy is binding on plaintiff with
respect to his EPPA claim.

II. Unconscionability

Plaintiff alleges that, even if he had agreed to the
Arbitration Policy, it is unconscionable and therefore
unenforceable. As with any agreement, a party will not be bound
by an arbitration agreement that is unconscionable. Brennan,
198 F.Supp.2d at 381, citing Gilmer v. Interstate/Johnson Lane

- 7 -

Corp., 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).
An unconscionable agreement is "one which is so grossly
unreasonable or unconscionable in the light of the mores and
business practices of the time and place as to be unenforcible
[sic] according to its literal terms." Id. (citing Corbin on
Contracts § 128). In New York, unconscionability generally
requires both procedural and substantive elements.   See Gillman
v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10, 537 N.Y.S.2d
787, 534 N.E.2d 824 (1988).   In determining whether a contract
is unconscionable, a court should take a "flexible" approach,
examining "all the facts and circumstances of a particular
case." In re Estate of Friedman, 64 A.D.2d 70, 407 N.Y.S.2d 999,
1008 (2d Dep't 1978).

> A.    The Test for Unconscionability

> 1.    Procedural Unconscionability

The test for procedural inadequacy in forming a contract is
whether, in light of all the facts and circumstances, a party
lacked "a meaningful choice" in deciding whether to sign the
contract. Desiderio v. National Ass'n of Sec. Dealers, 191 F.3d
198, 207 (2d Cir. 1999), cert. denied, 531 U.S. 1069, 121 S.Ct.
756, 148 L.Ed.2d 659 (2001) (quoting 8 Samuel Williston, A
Treatise on the Law of Contracts § 18:9, at 54 (4th ed.1998)).
Although it is true that "one who signs an agreement without
full knowledge of its terms might be held to assume the risk

- 8 -

that [s]he has entered a one-sided bargain," this rule does not apply if a plaintiff is able to demonstrate an absence of meaningful choice. Id. To determine whether a contract was validly formed, a court should focus on evidence of high pressure or deceptive tactics, the use of fine print in the contract, and any disparity in bargaining power between the parties. See Gillman, 73 N.Y.2d at 10-11, 537 N.Y.S.2d 787, 534 N.E.2d 824.

2.    Substantive Unconscionability

A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed. See Desiderio, 191 F.3d at 207. While the procedural aspect of unconscionability is shown by reference to the contract formation process, "substantive elements of unconscionability appear in the context of the contract per se...." Matter of Friedman, 64 A.D.2d 70, 407 N.Y.S.2d 999, 1008 (2d Dep't 1978).

B.    The Alleged Unconscionability of the Agreement to Arbitrate

1.    Alleged Procedural Unconscionability

Here, plaintiff alleges that the arbitration agreement was procedurally unconscionable because (1) he had only a few moments to sign the Acknowledgment, and (2) he signed the Acknowledgment out of fear for losing his job. However,

agreeing to arbitrate as a condition of employment does not create procedural unconscionability. See, e.g., <u>Williams v. Parkell Prods., Inc.</u>, 91 Fed.Appx. 707, 708 (2d Cir. 2003); <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 123-24, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); <u>Desiderio</u>, 191 F.3d at 204-05. Moreover, allegations that an employee was under time pressure to read and sign a legally binding document, without allegations that plaintiff sought additional time to review the document in question, do not render the agreement procedurally unconscionable. Under such circumstances, there is no evidence that plaintiff involuntarily signed the form or had no other options but to sign it. <u>Berger v. Cantor Fitzgerald Securities</u>, 967 F.Supp. 91, 95 (S.D.N.Y. 1997).

Finally, plaintiff's reliance on <u>Brennan v. Bally Total Fitness</u>, 198 F.Supp.2d 377 (S.D.N.Y. 2002) is unavailing. <u>Brennan</u> is distinguishable in view of the fact that the agreement in that case was forced upon the plaintiff after the dispute arose, and was obtained in manifestly unfair circumstances. See <u>Stewart v. Paul, Hastings, Janofsky & Walker, LLP</u>, 201 F.Supp.2d 291, 294 (S.D.N.Y. 2002) (citing <u>Brennan</u>, 198 F.Supp.2d at 378-80). Plaintiff's meager allegations in this case do not rise to the level of the bullying tactics described in <u>Brennan</u>.

2.    Alleged Substantive Unconscionability

- 10 -

While this Court has already found that the agreement to
arbitrate was not procedurally unconscionable, eliminating the
need for further inquiry, the Court also notes that it does not
find the agreement to be substantively unconscionable.
Plaintiff argues that the arbitration agreement is substantively
unconscionable because it is subject to change by plaintiff's
employer. Brennan held that an employer's right to unilateral
modification of an arbitration agreement with only 30 days'
notice, along with the fact that the agreement applied
retroactively and cut off a pending lawsuit, rendered the
arbitration agreement at issue in that case substantively
unconscionable. 198 F.Supp. at 384. However, while the
arbitration agreement here contains a similar provision
regarding unilateral modification with 30 days' notice, it does
not appear to apply retroactively, and courts in other
jurisdictions have found such agreements not to be substantively
unconscionable. See, e.g., Blair v. Scott Specialty Gases, 283
F.3d 595, 604 (3d Cir. 2002) (holding that an arbitration
agreement promulgated in an employee handbook is not illusory
where employer's ability to modify it was limited to future
disputes after: (1) proper notification to employees, and (2)
acceptance by the employee as evidenced by continuing
employment).[4] This Court agrees with defendant that the

---

[4] Plaintiff essentially argues that the arbitration agreement, which is

arbitration agreement at issue here is not substantively unconscionable.

III. Appropriateness of Dismissal

Section 3 of the Federal Arbitration Act provides that where claims are properly referable to arbitration, upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete. 9 U.S.C. § 3. This rule, however, was not intended to limit dismissal of a case in the proper circumstances. Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992). A district court has discretion to dismiss a case when all of the issues raised in the district court must be submitted to arbitration. Sea-Land Service, Inc. v. Sea-Land of P.R., Inc., 636 F.Supp. 750, 757 (D.Puerto Rico 1986); Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988) (expressly holding that 9 U.S.C. § 3 does not preclude dismissal); Hoffman v. Fidelity and Deposit Co. of Maryland, 734 F.Supp. 192, 195 (D.N.J. 1990); Dancu v. Coopers & Lybrand, 778 F.Supp. 832, 835 (E.D.Pa. 1991). As stated in Sea-Land:

> Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will

---

subject to unilateral modification, should be regarded as illusory due to a lack of mutual obligation.  However, under New York law, an employment agreement with an arbitration provision need not have mutuality of obligation so long as the contract is supported by adequate consideration.  Sablosky v. Edward S. Gordon Co., Inc., 73 N.Y.2d 133, 135-36, 535 N.E.2d 643 (1989).

not entail renewed consideration and adjudication of the
merits of the controversy but would be circumscribed to a
judicial review of the arbitrator's award in the limited
manner prescribed by law. See 9 U.S.C. sections 9-12...

Sea-Land, 636 F.Supp. at 757. See also Chanchani v.

Salomon/Smith Barney, Inc., No. 99 Civ. 9219 (RCC), 2001 WL

204214 at *6 (S.D.N.Y. Mar. 1 2001); Gonzalez v. Toscorp Inc.,

No. 97 Civ. 8158 (LAP), 1999 WL 595632 at *4 (S.D.N.Y. Aug. 5,

1999).  Accordingly, dismissal, rather than a stay of the

proceedings, is appropriate in this case.

### Conclusion

For the forgoing reasons, defendant's motion is GRANTED.
This is case is dismissed subject to reinstatement in the event
post-arbitral proceedings become necessary.  The Clerk of the
Court is directed to close this case.

**SO ORDERED:**

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
March 30, 2006

- 13 -

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Tracey K. Jenkins, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:05-1199-PMD-GCK |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| CitiFinancial, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On April 22, 2005, Plaintiff Tracey K. Jenkins ("Plaintiff" or "Jenkins") filed this action against her former employer, CitiFinancial, Inc. ("Defendant" or "CitiFinancial"), alleging sexual harassment, violations of her civil rights, constructive discharge, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). On June 13, 2005, CitiFinancial filed a motion seeking to compel arbitration of Plaintiff's claims and stay the proceedings.

The record includes a Report and Recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B). The Magistrate recommends that CitiFinancial's motion to compel arbitration be denied. A party may object, in writing, to a R&R within ten days[1] after being served with a copy of that report. 28 U.S.C. § 636 (b)(1).

---

[1] Under Rule 6 of the Federal Rules of Civil Procedure, when the period of time allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. Fed. R. Civ. P. 6(a). Also, where service is made by delivering a copy of the R&R by electronic means, as it was in this case, three days are added after the prescribed period of time to respond. Fed. R. Civ. P. 6(e).

1

Defendant has filed timely objections to the R&R.[2]

## I. **BACKGROUND**

Jenkins and CitiFinancial disagree as to whether there exists a valid contract or agreement[3] to arbitrate the employment disputes at issue. The parties agree, however, that if such an agreement to arbitrate exists, then the claims brought by Jenkins fall within the scope of the arbitration policy at issue. The facts relevant to the formation of the alleged agreement to arbitrate are as follows:

In May 1998, Jenkins began working for Avco Financial as a Manager. Through various purchases and mergers of the corporation, by January 2001, Plaintiff was working for CitiFinancial, Inc. as an Assistant Manager. In 2001, CitiFinancial adopted an Employment Arbitration Policy, which was made a part of CitiFinancial's Employee Handbook and was distributed to all CitiFinancial Employees.

On February 6, 2002, after she had been working for CitiFinancial for over a year, Jenkins received a CitiFinancial Handbook and signed a CitiFinancial Employee Handbook Receipt Form (the "Receipt Form"). In its entirety, the Receipt Form read as follows:

2002
EMPLOYEE HANDBOOK
RECEIPT FORM

I have received the CitiFinancial Employee Handbook and, in consideration of my

---

[2]  Jenkins asserts that the objections were untimely filed and should be summarily denied. However, according to the docket, the R&R was filed on November 3, 2005, with objections due on November 24, 2006. CitiFinancial filed its objections on November 21, 2006, well within the time allowed by statute. Accordingly, the court finds that the objections to the R&R were timely filed.

[3] The Magistrate Judge makes a distinction between the terms "agreement" and "contract." The court agrees that the terms, as meant by the FAA, are not interchangeable; however, for the purposes of this Order, the distinction is not material.

2

continued at will employment by the Company, I will comply with it and all the Policies and Procedures of the Company. I will take responsibility for having any questions about any policies answered. This document does not create a contract between the Company and me for either employment for any definite period of time or for the providing of benefits for any definite period of time.

IMPORTANT. THIS HANDBOOK CONTAINS A PROVISION WHICH REQUIRES YOU TO SUBMIT EMPLOYMENT RELATED DISPUTES TO BINDING ARBITRATION. PLEASE READ IT CAREFULLY. NO OTHER PROVISION IN THIS HANDBOOK IS INTENDED TO CONSTITUTE A WAIVER, NOR SHOULD BE CONSTRUED TO CONSTITUTE A WAIVER, OF THE COMPANY'S RIGHTS TO COMPEL ARBITRATION OF EMPLOYMENT RELATED ISSUES.

Please read this handbook carefully. If you do not understand any portion of it, please see your manager or Human Resources Representative for an explanation. Complete this form and return it to Human Resources within 5 days of receipt. Failure to do so will not affect applicability of the Employee Handbook or any provisions to you.

Among other provisions, the Employee Handbook contained a mandatory arbitration policy,

which provided:

The Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e. statutory, contractual, or common-law rights) that may arise between an employee or former employee and CitiFinancial or its current and former parents, subsidiaries, and affiliates . . . including without limitation claims, demands or actions under Title VII of the Civil Rights Act of 1964 . . . and any other federal, state, or local statute, regulation or common law doctrine, regarding employment discrimination or termination of employment.

Employee Handbook, p. 26.

According to the her depositions, Jenkins claims that she was not given an opportunity to

read the Employee Handbook or the Receipt Form prior to being asked to sign the Receipt Form.

She recalled that her manager told her that the Receipt Form only indicated that she had received

a copy of the Employee Handbook and that her signing the Form was necessary to process her

payroll and benefits. Jenkins claimed to have had no actual knowledge of the contents of the

3

Receipt Form or the arbitration agreement contained in the Handbook at the time she signed the Receipt Form. CitiFinancial offers no evidence or testimony contradicting Jenkins's recollection of these events.

On February 22, 2006, United States Magistrate Judge George C. Kosko heard arguments with respect to the enforcement of the alleged agreement to arbitrate. Following that hearing, the Magistrate Judge issued his R&R, in which he found that the Receipt Form and Employee Handbook did not constitute a "contract or agreement" to arbitrate. He reasoned that South Carolina law requires that for a contract to exist, there must be an offer and an acceptance accompanied by valuable consideration. (R&R at 14.) Because Jenkins did not understand that she was signing an agreement to arbitrate, the Magistrate Judge held that there was no valid "offer" or "acceptance." She merely understood the Receipt Form, as its name would imply, to indicate that she had received the Employee Handbook. As such, there was no "meeting of the minds" or mutual understanding that could form the basis of a contractual obligation or agreement. (R&R at 19, 23.)

The Magistrate Judge also noted that, in general, South Carolina law holds a person signing a document responsible for reading that document and making sure of its contents prior to signing; however, given Jenkins' uncontroverted testimony that (1) she was presented with the Receipt Form during a busy workday, (2) her manager told her that her payroll and benefits would be affected if she did not sign the Form, and (3) he assured her that the Receipt Form merely indicated her receipt of the Employee Handbook, he found that "it is understandable that [she] did not read the Receipt Form prior to signing it." (R&R at 17, n. 41.)

Accordingly, the Magistrate Judge found that "there exist genuine issues of material fact as to whether Plaintiff and Defendant entered into an agreement or a contract to arbitrate employment

4

disputes" and recommended that CitiFinancial's Motion to Stay Proceedings and Compel Arbitration

be denied. CitiFinancial has objected to this recommendation.

## II. **STANDARD OF REVIEW**

### A. **Magistrate Judge's R & R**

The Magistrate Judge makes only a recommendation to this court. The recommendation has

no presumptive weight, and the responsibility for making a final determination remains with the

court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of

the R & R to which a specific objection is made, and the court may accept, reject, or modify, in

whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with

instructions. 28 U.S.C. § 636(b)(1)(C).

### B. **Validity of an Agreement to Arbitration**

The Federal Arbitration Act ("FAA") governs the arbitrability of the matter in this case.[4]

9 U.S.C. §§ 1-16 (1999). The FAA provides that "[a] written provision in any . . . contract

evidencing a transaction involving commerce to settle by arbitration a controversy arising out of

such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (2000). The FAA requires a court

to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an

agreement in writing for such arbitration." 9 U.S.C. § 3. This Act represents "a liberal federal

policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

---

[4] The FAA preempts the South Carolina Uniform Arbitration Act for the purposes of determining the enforceability of the arbitration policy in this case. *See Munoz v. Green Tree Financial Corp.*, 343 S.C. 531, 542 S.E.2d 360 (S.C. 2001). Accordingly, the court finds Jenkins's arguments which rely on the South Carolina Uniform Arbitration Act are inapplicable to this case.

460 U.S. 1, 24 (1983). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

"It [i]s for the court, not the arbitrator, to decide in the first instance whether the dispute [i]s to be resolved through arbitration." *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also A.T. Massey Coal Co. v. International Union,* 799 F.2d 142, 146 (4th Cir. 1986) ("[W]hether there is a contract to arbitrate 'is undeniably an issue for judicial determination.'" (*quoting AT & T Techs., Inc. v. Comm. Workers of Am.,* 475 U.S. 643, 649 (1986))). In so deciding, the court must " 'engage in a limited review to ensure that the dispute is arbitrable-i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.' " *Hooters of America, Inc. v. Phillips,* 173 F.3d 933, 937 -938 (4th Cir. 1999) (*quoting PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir. 1990)).

While there is a strong policy favoring arbitration, arbitration is available only when the parties involved contractually agree to arbitrate. *General Drivers, Warehousemen and Helpers Local Union No. 509 v. Ethyl Corp.,* 68 F.3d 80, 83 (4th Cir. 1995). In determining whether an agreement to arbitrate exists, "the court should apply 'ordinary state-law principles that govern the formation of contracts.'" *Johnson v. Circuit City Stores,* 148 F.3d 373, 377 (4th Cir. 1998) (*quoting First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)); *see also Arrants v. Buck,* 130 F.3d 636, 640 (4th Cir. 1997) ("Courts decide whether there is an agreement to arbitrate according to common law principles of contract law."). Accordingly, in this case, the court must apply the

ordinary contract law of South Carolina to determine whether the parties formed a valid arbitration agreement.

The policy of South Carolina, as well as of the United States, is to favor arbitration of disputes; therefore, there is a strong presumption in favor of the validity of arbitration agreements. *O'Neil v. Hilton Head Hosp.,* 115 F.3d 272, 273 (4th Cir. 1997); *Heffner v. Destiny, Inc.,* 321 S.C. 536, 537, 471 S.E.2d 135, 136 (S.C. 1995) ("The policy of the United States and this State is to favor arbitration of disputes.").

## III. ANALYSIS

CitiFinancial objects to the Magistrate Judge's finding that, under South Carolina law, an arbitration agreement contained in an Employee Handbook and referenced in a signed Receipt Form does not constitute an enforceable unilateral contract. CitiFinancial notes that the Magistrate Judge failed to consider a case directly on point from the South Carolina Court of Appeals, *Towles v. United Healthcare Corp.,* 338 S.C. 29, 524 S.E.2d 839 (1999). The facts of Towles are remarkably similar to those of the case sub judice: The plaintiff, Towles, began work as an at-will employee for United HealthCare in 1995. In 1996, Towles signed a Code of Conduct and Employee Handbook Acknowledgment form. In relevant part, the one-page Acknowledgment stated,

> I acknowledge that I have received a copy of the United HealthCare Corporation (UHC) code of Conduct and the Employee Handbook. I understand that these documents contain important information on UHC's general personnel policies and on my obligations as an employee. I will remain familiar with, and agree to abide by these policies.
> * * *
> I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and [United].
> * * *
> I understand that arbitration is the final, exclusive and required forum for the resolution of all employment disputes which are based on a legal claim. I agree to

7

submit all employment related disputes based on a legal claim to arbitrate under [United's] policy.

*Id.* at 39, 524 S.E.2d at 845.

Although Towles asserted he never had actual knowledge of the arbitration provisions, the South Carolina Court of Appeals found that "after receiving and signing the Acknowledgment, Towles cannot legitimately claim United failed to provide actual notice of the arbitration provisions because the law does not impose a duty to explain a document's contents to an individual when an individual can learn the contents from simply reading the document." *Id.* The Court went on to explain that, under South Carolina law,

> Most employment contracts are unilateral. *Prescott v. Farmers Tel. Coop., Inc.,* 335 S.C. 330, 516 S.E.2d 923 (1999). "A unilateral contract has the following three elements: 1) a specific offer, 2) communication of the offer to the employee, and 3) performance of job duties in reliance on the offer." *Id.* at 336, 516 S.E.2d at 926. There is no requirement of mutuality of obligation in a unilateral contract; there is only one promisor and one promisee for whom the contract creates a legally enforceable right. *Fleming v. Borden, Inc.,* 316 S.C. 452, 460-1, 450 S.E.2d 589, 594 (S.C. 1994).

*Id.* at 38, 524 S.E.2d at 844.

With this in mind, the *Towles* Court found that the Acknowledgment and Employee Handbook constituted a unilateral contract creating a legally enforceable right to compel arbitration. *Id.* The "Acknowledgment constituted a specific communication of an offer which conditioned Towles's continued employment on his acceptance of the Employment Arbitration Policy as part of his employment contract." *Id.* "Towles's continued employment constituted sufficient consideration to render the Acknowledgment legally binding." *Id.* at 39 n. 4. As such, although no one disputed that Towles had no actual knowledge of the arbitration policy, the Court found that "the evidence leaves room for only one inference: the Acknowledgment constituted a binding arbitration agreement." *Id.*

8

CitiFinancial asserts that the holding in *Towles* is irreconcilable with the recommendation of the Magistrate Judge. The court agrees. Given the holding in *Towles*, the court finds that the Magistrate Judge did indeed err in finding that the Receipt Form and Employee Handbook did not constitute an offer which conditioned Jenkins's continued employment on her acceptance of the arbitration policy. The Receipt Form, like the Acknowledgment in *Towles*, alerted the employee to the arbitration policy located in the Employee Handbook, and explained to the employee that arbitration is the means by which employment related disputes will be resolved. The Receipt Form also informed Jenkins that her continued employment after notice of the policy constituted an acceptance of that policy.[5] After receiving and signing the Receipt Form, which explicitly provided that the signer consents to be bound by the policies in the Handbook and explained that a policy within the Employee Handbook "REQUIRES YOU TO SUBMIT EMPLOYMENT RELATED DISPUTES TO BINDING ARBITRATION," Jenkins cannot legitimately claim CitiFinancial failed to provide notice of the arbitration provisions.[6]

The court further finds that the Magistrate Judge erred in finding that because Jenkins had not read the arbitration agreement, she did not "accept" the offer to arbitrate. Because ordinary

---

[5] Jenkins's signature on the Receipt Form is significant in that it proves that she did receive actual notice of the change in CitiFinancial's policy.

[6] The Magistrate Judge asserts that the language of the Receipt Form does not indicate that the employee has read and assented to the policies of the Employee Handbook because it instructs the employee to "read this handbook carefully" and to "see your manager or Human Resources Representative for an explanation." Therefore, the Magistrate Judge found that the Receipt Form, even if Jenkins had read it, did not constitute a specific offer to accept the arbitration policy.

The court is not persuaded by this argument. Although the Receipt Form does anticipate that the employee may have questions regarding the Handbook, it clearly provides actual notice of CitiFinancial's arbitration policy and conditions continued employment on the acceptance of this policy. Further, the Receipt Form explicitly gives the employee "5 days [from] receipt" of the Form to have "any questions about any policies answered" before returning it to Human Resources.

9

contract principles apply here, Jenkins's claim that she did not knowingly sign the arbitration agreement is to no avail.[7] *Hooters of America, Inc. v. Phillips*, 39 F. Supp. 2d 582, 612 (D.S.C. 1998). Under South Carolina law, one entering into a written contract should read it and avail himself of every reasonable opportunity to understand its contents and meaning. *Maw v. McAlister*, 252 S.C. 280, 166 S.E.2d 203 (1969). A party cannot complain of fraud or misrepresentation in the contents of a contract if the truth could have been ascertained by reading it, except where the party is "ignorant and unwary." *Burwell v. South Carolina Nat'l Bank*, 288 S.C. 34, 340 S.E.2d 786 (1986). Accordingly, even assuming that her manager misrepresented the content of the Receipt Form, Jenkins had no *right* to rely on her manager's alleged misrepresentations.[8] The provision alerting her to the arbitration agreement is in all capital letters, is prominently located above the signature block, and is printed in the same suitable font size as other sections of the Receipt Form. The entire Receipt Form is only one page long and contains no fine print. Jenkins just did not read it. Even if her manager told her that the Receipt Form merely evidenced receipt of the Employee Handbook,[9] Jenkins had no right to rely on this representation when its truth would have been

---

[7] Jenkins's uncontradicted testimony is that her manager misinformed her regarding the content of the Receipt Form and instructed her to sign it without giving her time to read it.

[8] It is hornbook law that common law fraud requires nine essential elements: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Hooters of America*, 39 F. Supp. 2d at 606.

[9] Both the Magistrate Judge and Jenkins place significance on the fact that the document was entitled "Employee Handbook Receipt Form," rather than "Employee Arbitration Policy Consent Form." However, regardless of whether the title of the document was misleading, one who signs a document is responsible for having read the entire document. In this case, even a cursory reading of the first sentence of the Receipt Form would have alerted Jenkins that it required her compliance with CitiFinancial policies.

10

evident by an inspection of the document. *Hooters,* 39 F. Supp. 2d at 607 (citing *O'Connor v. Brotherhood of R.R. Trainmen,* 217 S.C. 442, 60 S.E.2d 884 (1950)) ("One cannot complain of fraud in the misrepresentation of the contents of written instruments signed by him when the truth could have been ascertained by reading the instrument, since one entering into the written contract should read it and avail himself of every opportunity to understand its content and meaning."). The court also finds unpersuasive Jenkins's argument that because the Receipt Form was presented to her during a busy work day, she had no time to read it. The Receipt Form was less than two hundred words in length and was easily understandable. Further, although she asserts that her manager instructed her to return the Form immediately, the Receipt Form explicitly gives the employee "5 days [from] receipt" of the Form to have "any questions about any policies answered" before returning it to Human Resources.

Applying South Carolina law as described by the holding in *Towles,* the court finds that CitiFinancial's delivery of the Receipt Form to Jenkins constituted a specific communication of an offer which conditioned Jenkins's continued employment on her acceptance of the arbitration policy. *See Prescott,* 335 S.C. 330, 516 S.E.2d 923 (noting a unilateral contract requires a specific offer communicated to the employee). Jenkins accepted the offer by continuing in her employment. Jenkins's continued employment also constituted sufficient consideration to render the Receipt Form legally binding. *See Small v. Springs Indus., Inc.,* 292 S.C. 481, 484, 357 S.E.2d 452, 454 (S.C. 1987) (holding an employee's "action or forbearance in reliance on [employer's] promise was sufficient consideration to make the promise legally binding"); *Riedman Corp. v. Jarosh,* 290 S.C. 252, 253, 349 S.E.2d 404, 405 (1986) (holding at-will employment constitutes sufficient consideration to support a covenant not to compete); *see also O'Neil,* 115 F.3d at 274-5 (holding a

11

mutual promise to arbitrate constituted sufficient consideration to enforce an arbitration agreement where the employer proffered, and the employee signed, an employee handbook and acknowledgment form over three and one-half years after employment began). Therefore, the court must reject the recommendation of the Magistrate Judge and find that the Receipt Form constituted a binding written arbitration agreement.

Jenkins raises several grounds for revocation of the agreement to arbitrate, including that the imposition of an arbitration agreement in a contract of adhesion is against public policy, that the terms of the arbitration policy are unconscionable, and that CitiFinancial's promise to arbitrate is illusory. However, as discussed briefly below, the court is not persuaded that these are appropriate "grounds for revocation."

### Contract of Adhesion

Jenkins argues that because she had no ability to bargain for the terms of her employment, the imposition of arbitration is unconscionable. The South Carolina Supreme Court, however, has found that the inclusion of an arbitration clause is not unconscionable as an adhesion contract. *Munoz v. Green Tree Financial Corp.*, 343 S.C. 531, 541, 542 S.E.2d 360, 365 (S.C. 2001). Similarly, federal substantive law under the FAA holds an arbitration clause is not invalid simply because it is part of an adhesion contract. *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282 (9th Cir. 1988). Inequality of bargaining power alone will not invalidate an arbitration agreement. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3d Cir. 1999).

### Unconscionability of the Terms of the Arbitration Policy

Jenkins objects generally to the limitations of arbitration, including limited discovery and

12

lack of jury. It is well settled, however, that an arbitral forum need not replicate the judicial forum. "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Mitsubishi Motors,* 473 U.S. at 626-27, 105 S.Ct. 3346; *see also Gilmer,* 500 U.S. at 31-32 (rejecting abbreviated discovery and lack of written opinions as reasons to inhibit arbitration of statutory claims).

Jenkins also objects that the specific arbitration procedures and rules of CitiFinancial's policy are "one-sided" and unconscionable. The court notes, however, that the arbitration policy described in the Employee Handbook adopts the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA"), a respected neutral arbitration association. The policy provides that the AAA will appoint a neutral arbitrator from its Employment Dispute Resolution Roster, and CitiFinancial will pay all filing fees, hearing fees, and arbitrator fees, and the arbitrator, in his discretion, will decide which party is responsible for any other fees of the arbitration. Upon review of the terms of the Employee Handbook's arbitration policy and procedure, the court finds that the policy does not employ biased or flawed rules or impose excessive fees such that it creates a "sham" dispute resolution forum. *See American General Life and Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (holding that even where employer forced its employees to accept the Program or else face termination, the employees' relinquishment of their state-created constitutional rights to state judicial forums and trial by jury did not render the Agreement unenforceable under West Virginia law where terms of Agreement were not unconscionable); *cf. Hooters,* 173 F.3d at 940 (invalidating arbitration agreement which required employee to unilaterally disclose claims and lists of witnesses and allowed employer to choose arbitration panel and exercise unbridled discretion

13

in changing rules); *Adkins,* 303 F.3d 496, 502 (4th Cir. 2002) (acknowledging that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum"). In addition, the court perceives no unconscionable defects in the policy itself with respect to omitted terms, or clearly biased terms weighed in favor of the employer. *See Wood,* 429 F.3d at 92.

### Illusory Promise/Mutuality of Consideration

Finally, Jenkins argues that agreement to arbitrate is illusory and lacks mutuality because, in the introduction to the Employee Handbook, CitiFinancial reserved the right to "unilaterally, in its sole discretion, create amend, supplement, modify, or eliminate the Employment Arbitration Policy." It is hornbook contract law that in order for a promise to be enforceable against a promisor, the promisee must have given some consideration for the promise. *Hooters,* 39 F.Supp.2d at 617 (*citing* E.A. Farnsworth, *Farnsworth on Contracts* § 2.2 at 61 (1990)). An illusory contract is also regarded as "an apparent promise which makes performance optional with the promisor . . . is in fact no promise." *Id.* (*citing Elmore v. Cone Mills Corp.,* 23 F.3d 855, 870 (4th Cir.1994)).

Generally, where one party reserves without restriction the right to cancel or modify an agreement at any time, courts have held that the promise is illusory and the agreement unenforceable. *Cheek v. United Healthcare of the Mid-Atlantic, Inc.,* 378 Md. 139, 835 A.2d 656 (Md. 2003); *Marcrum v. Embry,* 291 Ala. 400, 282 So.2d 49 (Ala. 1973) ("It is quite true that where one party reserves an absolute right to cancel or terminate a contract at any time, mutuality is absent."). Where, however, the right to cancellation is tempered by its terms, express or implied, so that cancellation is not solely at the whim of the promisor, the promise may still serve as consideration. *Williston on Contracts* § 7:7.

14

In this case, CitiFinancial's right to modify or cancel the arbitration agreement was not unfettered. The Handbook specified that "[a]ny such change to the Arbitration Policy shall be effective 30 days after you receive notice of such change." As such, because CitiFinancial was bound to provide written notice thirty days prior to changing or terminating the arbitration policy, its promise to be bound by arbitration is not illusory. *See Laclede Gas Co. v. Amoco Oil Co.*, 522 F.2d 33 (8th Cir. 1975) (holding that Laclede's right to terminate was neither arbitrary nor unrestricted, in part because it had to give Amoco 30 days' written notice of termination); *Fleming*, 316 S.C. at 463, 450 S.E.2d at 596 ("We hold that the implied contract of employment created by an employee handbook may be modified by a subsequent employee handbook. To be effective, however, the employee must have reasonable notice of the modification."); *Moody v. McLellan*, 295 S.C. 157, 161, 367 S.E.2d 449, 451 (Ct. App. 1988) (holding that "a contract may provide that it shall come to an end *upon notice* by one of the parties and such a stipulation, when fairly entered into, will be enforced").

Therefore, because Jenkins and CitiFinancial formed a valid, binding arbitration agreement subject to the FAA which encompasses Jenkins's Title VII claims, the FAA requires arbitration.

### III. **CONCLUSION**

It is, therefore,

**ORDERED,** for the foregoing reasons, that Defendant CitiFinancial's motion to submit this action to arbitration is **GRANTED**. The entire action is hereby **REFERRED** to arbitration according to the terms of and as described in the Employee Handbook. This action is **STAYED** pending arbitration.

**AND IT IS SO ORDERED.**


PATRICK MICHAEL DUFFY
United States District Judge


**Charleston, South Carolina**
**January 16, 2007.**

16

# EXHIBIT 5

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2001 WL 204214 (S.D.N.Y.), 85 Fair Empl.Prac.Cas. (BNA) 840, 80 Empl. Prac. Dec.
P 40,538, 17 IER Cases 860

(Cite as: 2001 WL 204214 (S.D.N.Y.))

C

United States District Court, S.D. New York.
Ajay CHANCHANI and Bharati Chanchani,
Plaintiffs,
v.
SALOMON/SMITH BARNEY, INC., Defendant.
No. 99 CIV 9219 RCC.

March 1, 2001.

OPINION AND ORDER

CASEY, D.J.

*1 Plaintiffs Ajay and Bharati Chanchani
(collectively, the "Chanchanis") filed the
above-captioned action against their former
employer, defendant Salomon Smith Barney, Inc.
("Smith Barney" or the "Company"), alleging
common law wrongful termination and employment
discrimination in violation of Title VII of the civil
rights laws, 42 U.S.C. § 2000 et seq. Smith Barney
now moves to compel arbitration pursuant to the
dispute-resolution clause contained in the
Company's Employee Handbook, and requests that
this Court stay further proceedings pending
resolution of that arbitration. For the reasons set
forth below, Smith Barney's motion is granted.

I. BACKGROUND

Defendant Smith Barney, a registered broker-dealer
of securities, is headquartered in New York, New
York, with branches nationwide. During the period
relevant to the instant motion, the Chanchanis were
employed in Smith Barney's Lawrenceville, New
Jersey office. Mr. Chanchani held the position of
Financial Consultant, or broker. Mrs. Chanchani
initially worked as a Sales Assistant, providing
clerical support to her husband, before she too
obtained the title of Financial Consultant.

In 1993, Smith Barney distributed to its personnel
an Employee Handbook containing the Company's
dispute-resolution policy, which made arbitration
the exclusive forum for claims against the
Company. Smith Barney issued updated versions of
the Handbook in 1994, 1995 and 1996. Mr. and
Mrs. Chanchani acknowledged receipt of the 1996
version by signing individual Employee Handbook
Receipt Forms in March 1997. See Declaration of
Scott E. Kresch dated November 1, 1999 ("Kresch
Decl."), Exs. 3-4. [FN1] In executing the Receipt
Forms, the Chanchanis affirmed that they reviewed
the Handbook and agreed to "comply with all the
Policies and Procedures of the Company." Id.

> FN1. Mr. Chanchani appears also to have
> signed a copy of the Receipt Form in
> February 1997. See Affidavit of Ajay
> Chanchani dated April 13, 2000
> ("Chanchani Aff."), Ex. A.

The 1996 Handbook sets forth the arbitration
policy, in pertinent part, as follows:
  The Policy makes arbitration the required, and
  exclusive, forum for the resolution of all disputes
  based on legally protected rights (i.e. statutory,
  contractual or common law rights) that may arise
  between an employee or former employee and the
  [Company] or its affiliates, officers, directors,
  employees and agents (and which are not
  resolved by the internal dispute resolution
  procedure), including claims, demands or actions
  under Title VII of the Civil Rights Act of 1964 ...
  and any other federal, state or local statute,
  regulation or common law doctrine, regarding
  employment discrimination, conditions of
  employment, or termination of employment.
Kresch Decl., Ex. 1 at p. 5. The policy further
provides that arbitration shall be conducted
pursuant to the rules of the New York Stock
Exchange ("NYSE") except as modified by the
policy. Id. If the NYSE declines to provide a forum

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                          Page 2

Not Reported in F.Supp.2d, 2001 WL 204214 (S.D.N.Y.), 85 Fair Empl.Prac.Cas. (BNA) 840, 80 Empl. Prac. Dec.
P 40,538, 17 IER Cases 860

**(Cite as: 2001 WL 204214 (S.D.N.Y.))**

for the dispute, the arbitration is to be governed by the rules of the American Arbitration Association ("AAA"). *Id.*

In March 1998, Smith Barney again distributed Receipt Forms to the Lawrenceville employees pertaining to a newly-issued Interim Employee Handbook. The Interim Handbook, by its terms, "supersedes any conflicting human resources/employment-related policies" of Smith Barney. Reply Declaration of Scott E. Kresch dated April 19, 2000 ("Kresch Reply Decl."), Ex. 1. The Chanchanis never signed the 1998 Receipt Forms. In any event, in April 1998, the branch manager, Rochelle Horst, informed the Lawrenceville employees that the Receipt Form procedure was under review, and stated that she would advise them upon clarification of the policy. *See* Chanchani Aff., Ex. D. Ms. Horst returned those 1998 Receipt Forms which already had been signed to the appropriate individuals.

*2 On October 1, 1998, Smith Barney terminated Mr. Chanchani. Mrs. Chachani left the Company thereafter. In 1999, the Chanchanis filed discrimination claims against Smith Barney with the EEOC. After the EEOC issued a "right to sue" letter, the Chanchanis filed the instant complaint in this Court asserting race discrimination, national original discrimination, retaliation and wrongful termination. Specifically, the complaint alleges that (1) Smith Barney improperly failed to promote Mr. Chanchani; (2) Lawrenceville management allocated new syndicate issues among employees in a discriminatory fashion; (3) Mrs. Chanchani was subject to separate incidents of harassment by Ms. Horst; and (4) the Chanchanis were retaliated against for reporting their complaints to management. Smith Barney now moves to compel arbitration and to stay the proceedings in this Court on the ground that the arbitration policy contained in the Employee Handbook governs this dispute.

II. DISCUSSION

The federal policy favoring arbitration is well-established. *See Gilmer v. Interstate/Johnson*

*Lane Corporation,* 500 U.S. 20, 24 (1991); *Desiderio v. National Association of Securities Dealers, Inc.,* 191 F.3d 198, 203-04 (2d Cir.1999); *Arakawa v. Japan Network Group,* 56 F.Supp.2d 349, 352 (S.D.N.Y.1999); *Maye v. Smith Barney Inc.,* 897 F.Supp. 100, 105 (S.D.N.Y.1995). Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When faced with a motion to compel arbitration under the FAA, the court must assess the following factors: (1) whether the parties agreed to arbitrate; (2) whether the parties' claims fall within the scope of the agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable. *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987); *see also Arakawa,* 56 F.Supp.2d at 352. [FN2]

> FN2. The Court generally must also decide whether to stay the balance of the case pending arbitration in the event that certain claims are non-arbitrable. *Genesco,* 815 F.2d at 844. Because the Court finds that all claims asserted herein are subject to arbitration, this fourth factor is irrelevant. *See Arakawa,* 56 F.Supp.2d at 353 n. 2.

A. AGREEMENT TO ARBITRATE

With respect to the first factor, courts employ "ordinary principles of contract and agency" in order to determine whether the parties have agreed to arbitrate. *Thomson-CSF S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776- 77 (2d Cir.1995). A party generally will be held to a signed contract unless he can demonstrate special circumstances, such as duress or coercion, that contradict his intent to be bound. *See Arakawa,* 56 F.Supp.2d at 352 (applying New York law). Smith Barney argues that the Chanchanis expressly accepted binding arbitration when they executed their Employee Handbook Receipt Forms in 1997. The language of the Receipt Form reads, in pertinent part:

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 3

Not Reported in F.Supp.2d, 2001 WL 204214 (S.D.N.Y.), 85 Fair Empl.Prac.Cas. (BNA) 840, 80 Empl. Prac. Dec.
P 40,538, 17 IER Cases 860

**(Cite as: 2001 WL 204214 (S.D.N.Y.))**

I have reviewed the Smith Barney Employee
Handbook ... I will comply with all the Policies
and Procedures of the Company. I will take
responsibility for having any questions about any
policies answered.
**\*3** Kresch Decl., Exs. 3-4.

Courts in this district routinely uphold arbitration
agreements contained in employee handbooks
where, as here, the employee has signed an
acknowledgment form. *See Arakawa,* 56 F.Supp.2d
at 352 (holding that parties' arbitration agreement
was manifested in employee handbook and
acknowledgment form signed by plaintiff, and
constituted a valid, enforceable contract to
arbitrate); *Degaetano v. Smith Barney,* No. 95 Civ.
1613, 1996 WL 44226, at *7-8 (S.D.N.Y. Feb. 5,
1996) (holding that signed arbitration agreement in
employment handbook was an enforceable contract
in accordance with New York law); *Maye,* 897
F.Supp. at 105-07 (enforcing signed arbitration
policy contained in employee handbook according
to state law principles of contract formation).

Notwithstanding this case law, the Chanchanis
argue that the 1996 Employee Handbook policy
does not constitute a binding agreement because
Smith Barney "disavowed" it by issuing the Interim
Handbook without requiring Receipt Forms.
However, by its own terms, the 1998 Interim
Handbook supersedes only previous "conflicting"
employment policies. Kresch Reply Decl., Ex. 1.
The arbitration provision contained in the 1998
Interim Handbook is identical in all respects to that
contained in the earlier edition. *Id.* ¶ 3. There is
therefore no support for plaintiffs' contention that
the policy in the 1996 manual was superseded by
the Interim Handbook.

Moreover, the Chanchanis would still be subject to
the later arbitration provision even though they did
not execute Receipt Forms. The FAA does not
require that the parties sign written
acknowledgments of an arbitration agreement; it
mandates only that the agreement itself be in
writing. *See* 9 U.S.C. § 3; *see also Gonzalez v.
Toscorp Inc.,* No. 97 Civ. 8158, 1999 WL 595632,

at *2 (S.D.N.Y. Aug. 5, 1999) (citing cases). It is
well-settled that a non-signatory party may be
subject to an arbitration agreement if his subsequent
conduct indicates that he has assumed the obligation
to arbitrate. *See Thomson,* 64 F.3d at 777. Because
the Chanchanis continued to work at Smith Barney
even after the promulgation of the Interim
Handbook, and never informed Smith Barney that
they rejected its terms, they will be deemed to have
accepted its provisions.

In a similar case from this district, the Court held
that the plaintiff was subject to the company's
arbitration policy, distributed to employees along
with a copy of the company's handbook, despite the
fact that the plaintiff did not sign the required
receipt form. *See Gonzales,* 1999 WL 595632 at
*1-3. The Court found that the plaintiff assumed the
obligation to arbitrate when he continued his
employment with the company past the effective
date of the policy. *Id.* at *2; *see also Genesco v. T
Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987)
(finding that plaintiff agreed to arbitrate with
defendant under both signed and unsigned
agreements); *Bishop v. Smith Barney,* No. 97 Civ.
4807, 1998 WL 50210, at *5 (S.D.N.Y. Feb. 6,
1998) (holding that unsigned arbitration agreement
was binding under the FAA and indicating that
plaintiff's conduct demonstrated an obligation to
arbitrate). Therefore, the Chanchanis can be held to
arbitration under either the 1996 or the 1998 policy.

B. SCOPE OF THE AGREEMENT

**\*4** Courts must resolve any doubts as to the scope
of arbitrable issues in favor of arbitration. *See
Genesco,* 815 F.2d at 847 (citing *Moses H. Cone
Memorial Hosp. v. Mercury Constr. Corp.,* 460
U.S. 1, 24-25 (1983)). The Smith Barney arbitration
policy, by its terms, applies to "legally protected
rights (i.e. statutory, contractual or common law
rights) ... including claims, demands or actions
under Title VII of the Civil Rights Act of 1964 ...
and any other federal, state or local statute,
regulation or common law doctrine, regarding
employment discrimination, conditions of
employment, or termination of employment."

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 4

Not Reported in F.Supp.2d, 2001 WL 204214 (S.D.N.Y.), 85 Fair Empl.Prac.Cas. (BNA) 840, 80 Empl. Prac. Dec.
P 40,538, 17 IER Cases 860

**(Cite as: 2001 WL 204214 (S.D.N.Y.))**

Kresch Decl., Ex. 1 at p. 5. This comprehensive language therefore encompasses both plaintiffs' common law wrongful termination claim and plaintiffs' Title VII claims.

The Chanchanis argue, however, that the Smith Barney policy cannot encompass their employment discrimination claims because NYSE Rules 347 and 600, as amended effective January 1, 1999, mandate that such claims are not eligible for arbitration in the absence of a *post-dispute* arbitration agreement:

Rule 347. Controversies As to Employment or Termination of Employment
   (a) Except as provided in paragraph (b), any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.
   (b) A claim alleging employment discrimination, including any sexual harassment claim, in violation of a statute shall be eligible for arbitration only where the parties have agreed to arbitrate the claim after it has arisen.

Rule 600. Arbitration
   ...
   (f) Any claim alleging employment discrimination, including any sexual harassment claim, in violation of a statute shall be eligible for submission to arbitration under these Rules only where the parties have agreed to arbitrate the claim after it has arisen.
Reply Declaration of Michael Delikat dated April 20, 2000 ("Delikat Reply Decl."), Ex. 1. [FN3] The Chanchanis argue that these Rules are applicable here because the Chanchanis' Uniform Application for Securities Industry Registration or Transfer, commonly known as a Form U-4, as well as the Smith Barney policy itself, provide that arbitration shall be conducted in accordance with the NYSE rules.

FN3. Presumably the Chanchanis concede that their common law wrongful termination claim is not excluded from arbitration by the NYSE rules, which by their terms apply only to claims of "employment discrimination ... in violation of a statute ...." *Id.* Plaintiffs' papers do not address this distinction.

The Chanchanis contend that the NYSE rules must govern this dispute because the Smith Barney arbitration policy is superseded by the Chanchanis' Form U-4s. As brokers, the Chanchanis executed Form U-4s in order to become "registered representatives" with the NYSE and other self-regulatory securities organizations. The U-4 signed by Mr. Chanchani provides that:
   I agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the New York Stock Exchange, Inc.
**\*5** Affidavit of Alice K. Jump dated April 13, 2000 ("Jump Aff."), Ex. 1. The U-4 signed by Mrs. Chanchani is similar:
   I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.
*Id.,* Ex. 2. The Chanchanis urge that these arbitration agreements, which reference the NYSE rules, must take precedence over the Smith Barney policy, particularly as Smith Barney itself is a member of the NYSE.

The Court, however, does not agree that the Form U-4s trump the Smith Barney policy. First of all, it is generally recognized that later agreements supersede earlier agreements, not vice versa. *See,*

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                    Page 5

Not Reported in F.Supp.2d, 2001 WL 204214 (S.D.N.Y.), 85 Fair Empl.Prac.Cas. (BNA) 840, 80 Empl. Prac. Dec. P 40,538, 17 IER Cases 860

**(Cite as: 2001 WL 204214 (S.D.N.Y.))**

*e.g., Kreiss v. McCown De Leeus & Co.,* 37 F.Supp.2d 294, 301 (S.D.N.Y.1999) ("under New York law, a subsequent contract regarding the same subject matter supersedes the prior contract") (citations omitted). Mr. and Mrs. Chanchani signed their U-4s in 1971 and 1996, respectively; therefore the 1997 Receipt Forms would govern. In any event, the Court can give effect to both agreements because there is no conflict between the two--the terms of the U-4s and the NYSE rules in no way prohibit member organizations from entering into separate, private arbitration agreements with their employees. Indeed, the NYSE Rules merely prevent the NYSE from acting as an arbitral *forum* with respect to pre-dispute arbitration agreements. In its release approving the amendments to the Rules, the Securities and Exchange Commission ("SEC") recognized that, according to the NYSE's own interpretation, the proposal "neither invalidates pre-disputes arbitration agreements nor forces parties to litigate statutory employment discrimination claims--it merely removes the Exchange as an arbitration forum for such claims." SEC Release No. 34-40858, 1998 WL 907943, at *5 (Dec. 29, 1998). The SEC also recognized that such disputes could still be brought in "another forum provided for in the Form U-4 *or* arbitration agreement." *Id.* at *4 (emphasis added).

The Smith Barney arbitration policy provides such an alternative forum, stating that "[i]f the NYSE declines to provide a forum for dispute, the arbitration shall be conducted under the auspices of the American Arbitration Association (AAA), pursuant to the AAA rules as modified by the Travelers Group Arbitration Policy." Kresch Decl., Ex. 1 at p. 5. Consequently, plaintiffs' second argument--that the Smith Barney policy itself prohibits pre-dispute agreements because it references the NYSE rules--also must fail. Read in full, the policy clearly requires that the parties submit their dispute to the AAA where, as here, the NYSE does not provide a forum for the dispute. Therefore, both plaintiffs' Title VII employment claims and their common law wrongful termination claim are subject to arbitration under the AAA rules.

C.   ARBITRABILITY   OF   FEDERAL STATUTORY CLAIMS

*6 It is well-established in this Circuit that employment discrimination claims under Title VII of the Civil Rights Act are arbitrable. In *Desiderio v. National Ass'n of Securities Dealers, Inc.,* 191 F.3d 198, 204- 05 (2d Cir.1999), the Second Circuit definitively held that compulsory arbitration was not incompatible with the purposes of Title VII. The Second Circuit's decision was in accordance with the long-standing case law in this Circuit. *See, e .g., Maye,* 897 F.Supp. at 109-110.

III. CONCLUSION

For the foregoing reasons, defendant Smith Barney's motion to compel arbitration is granted. The Court will not conduct any further proceedings pending resolution of the parties' arbitration. The Court therefore directs the Clerk of the Court to close this case subject to reinstatement in the event that post-arbitral proceedings become necessary.

SO ORDERED:

Not Reported in F.Supp.2d, 2001 WL 204214 (S.D.N.Y.), 85 Fair Empl.Prac.Cas. (BNA) 840, 80 Empl. Prac. Dec. P 40,538, 17 IER Cases 860

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 6

10/29/99  FRI 10:56 FAX 202\_ ,831        CITIGOLD MACB                              ☑002

# CITIBANK

**Employment Application**

Citicorp, Citibank, N.A. or any subsidiary or affiliate

Please print the information requested on both sides and sign the bottom of the application.

| Last Name MARTIN | First Name Beverley | Middle Initial J |
|---|---|---|

| Apt. | Number and Street 1200 Redbreasted CT. | City Upper mailboro | State MD | Zip 20772 |
|---|---|---|---|---|

| Are You Less Than 18? ☐ YES ☒ NO | If Yes, Give Birthdate — | Telephone Number (including Area Code) (301) - 21 1821 314 | Social Security Number |
|---|---|---|---|

List name(s) of relatives working at Citibank, Citicorp or any subsidiary or affiliate

| LIST NAME(S) OF RELATIVES | ORGANIZATION | POSITION |
|---|---|---|
| | | |
| | | |

Have you ever been convicted of or pleaded guilty to any criminal offense, including any misdemeanor and/or felony, (before a court or by military court martial)?  ☐ YES  ☒ NO

Have you ever participated in a pretrial diversion or like program for a crime involving dishonesty or breach of trust?  ☐ YES  ☒ NO

Are you the subject of any order prohibiting you from working for a financial institution?  ☐ YES  ☒ NO

If the answer to any question above is "yes", you must provide the nature of the offense, the penalty and/or pretrial diversion, order prohibiting work for a financial institution, or like program, the dates and a full explanation of the surrounding circumstances for each and every conviction, and/or pretrial diversion, order prohibiting work for a financial institution or like program.  ☐ YES  ☐ NO _____

If hired, your responses will be verified by a criminal record check. Conviction of a criminal offense does not automatically bar a person from employment at Citibank, Citicorp or any subsidiary or affiliate. Factors such as federal statutory requirements, the relationship of the offense to employment, the length of time since the offense and the seriousness and nature of the violation will be taken into account.

Were you ever employed by Citibank, Citicorp or any subsidiary or affiliate?  ☐ YES  ☒ NO    IF YES, COMPLETE EMPLOYMENT HISTORY INFORMATION ON REVERSE SIDE

Have you ever performed services for Citibank, Citicorp or any subsidiary or affiliate while employed through a temporary-help agency?   ☐ YES  ☒ NO

| Type of Position Desired Client Service Manager | Location | Starting Salary Expected | DO YOU PREFER | ☒ FULL TIME ☐ PART-TIME ☐ TEMPORARY ☐ NIGHTS |
|---|---|---|---|---|
| Referred By Colliete Lee | | | | |

**Education**    List last High School, Technical/Specialty Schools, and all Colleges/Graduate Schools.

| NAME AND ADDRESS OF LAST HIGH SCHOOL | GRADUATE? | TYPE OF DIPLOMA | COURSE |
|---|---|---|---|
| St. Jago High Spanish Town JA W I | ☒ YES ☐ NO | Senior Cambridge GCO Advance | MAJOR MINOR O2 Level |

| NAME AND ADDRESS OF TECHNICAL, SPECIALTY AND ALL COLLEGES/GRADUATE SCHOOLS | DATES MO./YR. | GRADUATE? | DEGREE | COURSE |
|---|---|---|---|---|
| Miami Dade College Miami Fl. | 9 83 6 84 | ☐ YES ☒ NO | | MAJOR Accounting MINOR |
| Pima College | 1979 1980 | ☐ YES ☒ NO | | MAJOR Business Admin MINOR |
| University of West Indies Kingston Jam | 1975 1978 | ☐ YES ☐ NO | Accounting | MAJOR Business Admin MINOR Accounting |

WHAT OFFICE EQUIPMENT DO YOU OPERATE?  10 Key, IBM Computer        TYPING _____ WPM

WHAT COMPUTER PROGRAMS ARE YOU FAMILIAR WITH?  Windows, micro soft

WHAT FOREIGN LANGUAGES DO YOU SPEAK?  No programs.

Federal, state, and/or local law prohibits discrimination in hiring and employment on the basis of age, color, disability, marital status, national origin, race, religion, sex, veteran status, citizenship status, or other legally protected categories. No question on this application is intended to be used for any unlawful purpose

10/29/99  FRI 10:56 FAX 202&  831          CITIGOLD MACB

**Employment Record** .......... All information including salary will be verified

List all periods employment, including military service, for the last ten years (or last five employers). Start with your most recent positions and note any periods of unemployment. | Would we consult your present employer? ☐ YES ☐ NO

| Present or last employer | Dates (Mo./Yr.) | Current or last position | Salary (start/end) |
|---|---|---|---|
| Virginia Bank | 11/97 to Present | Asst. Branch Manager | |
| Address: 6400 Arlington Blvd Falls Church Va 2204 | | | Telephone 301-868-9433 |
| Duties: Daily Branch Operations, Supervise staff of 9 tellers & csrs. Develop strategies held to customer needs | | | Reason for Leaving |
| USSA Fed Savings Bank | 11/96 - 9/97 | Personal Banker / Underwriter | |
| Address: 1600 Elm St. Dallas TX | | | Telephone |
| Duties: Conducted financial need assessments. Provided information & marketed banking products. | | | Reason for Leaving: Relocate |
| Bank of America | 11/90 - 9/96 | Personal Banker | |
| Address: Spangdahlem Air Base Germany | | | Telephone |
| Duties: Audit branch & financial Instmnt to ensure compliance Liaison between Military Banking & Govt | | | Reason for Leaving: To relocate to US |
| American Express | 1986 - 1990 | Client Relations | |
| Address: RAF Fairford Glos England | | | Telephone |
| Duties: bought & sold foreign money facilitated & Resolved customer service issues | | | Reason for Leaving: Transferred to German desk camps |
| | | | |
| Address: | | | Telephone |
| Duties: | | | Reason for Leaving |

Please read the following statements carefully. We will consider you for employment after you sign this application.

1. The information I've provided on this application is accurate to the best of my knowledge and subject to verification by Citicorp, Citibank, N.A. or any subsidiary or affiliate. I understand that any misrepresentation or omission of fact in my application or resume will be justification for refusal to employ me or for termination of my employment without notice by Citicorp, Citibank, N.A. or any subsidiary or affiliate. I understand that should this application or a criminal record check reveal a conviction of a crime of dishonesty or breach of trust, further processing of this application or my employment, if hired, may be terminated.

2. I understand that this employment application is not a contract of employment. I further understand that if I am hired I will be an employee at will and that I may voluntarily leave employment at any time and for any reason and may be terminated by the employer at any time and for any reason.

3. I understand that:
   a) I must undergo and pass a drug test as a condition of my employment, and that, if hired I can be discharged for failure to comply with Citicorp, Citibank, N.A. or any subsidiary or affiliate's policy on drug abuse. I understand you recommend that I not resign my current job until a satisfactory drug test result is received.

b) If employed, I shall sign the Patent and Confidential Information Agreement in which I'll agree to protect Citicorp, Citibank N.A. or any subsidiary or affiliate's confidential information. This agreement also sets forth the conditions under which Citicorp, Citibank, N.A. or any subsidiary or affiliate is assigned the entire right, title, and interest to inventions or ideas developed while in Citicorp, Citibank, N.A. or any subsidiary or affiliate's employ.

c) The Immigration Reform and Control Act of 1986 requires that every individual hired be authorized to work in the United States. I understand that if offered employment I will be required to present proper documentation of my work eligibility and identification.

4. I understand that if employed, I must at all times comply with Citicorp, Citibank, N.A. or any subsidiary or affiliate's policies, standards or work performance and business conduct. Failure to do so can result in my release without notice.

| Signature of applicant | Date |
|---|---|
| Beverly J Harris | Oct 19th, 1995 |

ITEM 321455 (PER 722(L) REV. 7/97) PKG 50

# EXHIBIT 7

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

BOBBY TRIPP,                              )
                                         )
       Plaintiff,                )
                                         )
v.                                       )   Case No. 04-0497-CV-W-FJG
                                         )
CITICORP CREDIT SERVICES, INC.,          )
                                         )
       Defendant.                )

## ORDER

       Currently pending before the Court is the Defendant's Motion to Compel Arbitration and to Stay Proceedings (Doc. # 15).

       Plaintiff was employed by defendant Citicorp Credit Services, Inc. ("CCSI") from January 3, 1989 until February 28, 2004. In October 2001, the company instituted a Dispute Resolution Policy and an Arbitration Policy. On October 16, 2001, plaintiff acknowledged receiving the policies. The Arbitration policy specifically states that the employees' continued employment constituted acceptance of the Arbitration Policy. The Arbitration Policy also stated that it covered all employment disputes that an employee or former employee might have with the Company and that it was the "exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e. statutory, contractual or common law rights) that may arise between an employee or former employee and U.S. Consumer Group or its current and former parents, subsidiaries and affiliates . . .." The Arbitration Policy was also contained in an Employee Handbook that plaintiff acknowledged receiving on July 1, 2002. In his signed receipt, plaintiff acknowledged:

I understand that this *Handbook* contains a provision that requires me to submit employment-related disputes to binding arbitration (see Appendix). I have read that provision carefully. I also understand that no provision in this *Handbook* or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.

Plaintiff agrees that he signed an Acknowledgment Form regarding receipt of the

Company's Dispute Resolution and Arbitration Policy and that he reaffirmed his

acknowledgment of the policy by way of receipt of the Company's handbook. However,

he argues that the agreement to arbitrate "in a standardized form on a take it or leave it

basis is an adhesion agreement." He also argues that the language of both the dispute

resolution procedure and the arbitration program is so one sided that it is

unconscionable and unenforceable.

"Whether an arbitration agreement is valid is a matter of state contract law."

Farber v. Menard, Inc., 367 F.3d 1048 (8th Cir. 2004).

> In Missouri, an adhesion contract, as opposed to a negotiated contract, has been described as a form contract created and imposed by a stronger party upon a weaker party on a take this or nothing basis, the terms of which unexpectedly or unconscionably limit the obligations of the drafting party. . . . Adhesion contracts usually involve the unequal bargaining power of a large corporation versus an individual and are often presented in pre-printed form contracts. . . . But they are not inherently sinister and automatically unenforceable. . . . Because of the bulk of contracts signed in this country·are form contracts –a natural concomitant of our mass production-mass consumer society-any rule automatically invalidating adhesion contracts would be completely unworkable. . . . Rather, our courts seek to enforce the reasonable expectations of the parties. . . .Only those provisions that fail to comport with those reasonable expectations and are unexpected and unconscionably unfair are unenforceable. . . . Because standardized contracts address the mass of users, the test for reasonable expectations is objective, addressed to the average member of the public who accepts such a contract, not the subjective expectations of an individual adherent.

Swain v. Auto Services, Inc., 128 S.W.3d 103, 107 (Mo.App. 2003)(internal

citations and quotations omitted). In the instant case, the Court does not find that the
Dispute Resolution and Arbitration Policy is an adhesion contract. Even though their
was no negotiation and the policy was presented in a standardized form by the
employer who was in a superior bargaining position, the Court does not find that this
alone makes it unenforceable. An average member of the public would not find it
unreasonable to be asked to sign a Dispute Resolution policy which he had not been
given an opportunity to negotiate. Signing the policy was a condition of plaintiff's
continued employment with the company and all employees were required to sign the
policy. Therefore, the Court does not find that this makes policy an adhesion contract.

Plaintiff also argues that the dispute resolution policy is unconscionable because
the Company is not required to follow the program if it wishes to terminate an employee.
Additionally, plaintiff argues that the policy is unconscionable because the Company is
free to modify or terminate the program at any time.

In Faber, 367 F.3d 1048, the Court stated, "[w]e have made clear that when
reviewing an arbitration clause, we ask only (1) whether there is a valid arbitration
agreement and (2) whether the particular dispute falls within the terms of that
agreement." Id. at 1052. The Court noted that whether a particular agreement is valid is
a matter of state law. In Johnson v. Long John Silver's Restaurants, Inc., 320
F.Supp.2d 656 (M.D.Tenn. 2004), the Court applying Missouri law, stated:

> A contract is invalid when there is both procedural and substantive
> unconscionability. . . .Procedural unconscionability arises during the
> contracting process when there is fine print in the contract, there has been
> some misrepresentation, or there is unequal bargaining power. . . .
> Substantive unconscionability, on the other hand, occurs when the
> contractual terms are unduly harsh. . . .Provisions that an objective
> reasonable person would find unexpected and unconscionably unfair are

3

unenforceable. . . . Stated differently, a contract is unconscionable which no man in his right senses would make on the one hand and which no fair honest man would accept on the other.

Id. at 665 (internal citations omitted). In that case the Court found that the dispute resolution policy was not unconscionable because it advised employees that they could consult with an attorney, could review the program before agreeing to its terms and the policy was written in plain language that a lay person could comprehend and did not contain any fine print. The Court found that:

A reasonable employee would expect that the paperwork he signed at the beginning of his employment would contain some company policy regarding the resolution of employment disputes, including submitting those disputes to arbitration. Even though the parties had unequal bargaining power, the terms of the [dispute resolution program] are not unusually harsh; rather, [Long John Silver] agrees to share arbitration expenses, agrees not to hire an attorney if the employee does not hire an attorney, and states that any modifications to the arbitration provisions of the [dispute resolution program] must be mutual and in writing.

Id. at 667.

Plaintiff argues that because the Company is not required to follow the dispute resolution program if it wants to terminate an employee and because the Company is free to modify the program at any time and for any reason, the program is unconscionable. However, in his Suggestions in Opposition, plaintiff cites only cases from other jurisdictions, including the Ninth Circuit and the Northern District of Illinois.

In a recent opinion from the Missouri Supreme Court however it appears that this issue has not been definitively settled in Missouri. In Triarch Industries, Inc. v. Crabtree, 158 S.W.3d 772 (Mo. banc 2005), a party attacked an agreement to arbitrate on the basis that the arbitration clause was invalid because it was unilateral rather than mutual and it gave sole authority to the other party to decide to arbitrate and to set the rules for

4

the arbitration. The Court observed, "many state courts, and federal courts applying

state law, have invalidated similar non-mutual arbitration provisions because they are so

one-sided as to be illusory or unconscionable and, therefore, are unenforceable under

applicable state law. . . . Other courts have upheld such clauses on the basis that the

particular state's law does not require mutuality if there is otherwise sufficient

consideration for the agreement considered as a whole. . . . Missouri has not addressed

this issue in the context of an arbitration clause." Id. at 774-775 (internal citations

omitted). The Missouri Supreme Court in Triarch did not reach the issue of

enforceability or unconscionability of the clause because the court found that the trial

court had correctly determined that Triarch did not have a right to demand arbitration.

After examining the Arbitration policy at issue in this case, the Court does not find

that it is so one-sided or lacking in mutuality as to be deemed unconscionable. The

Agreement states in part:

> This Policy does not require that U.S. Consumer Group institute
> arbitration, nor is it required to follow the steps of the dispute resolution
> procedure before taking disciplinary action of any kind, including
> termination. However, if an employee disagrees with any such disciplinary
> action and believes that such action violated his or her legally protected
> rights, he or she may institute proceedings in accordance with the Policy.
> The results of the arbitration process are final and binding on the
> employee and the U.S. Consumer Group.

Dispute Resolution Policy and Procedure, p. 6. A footnote to this paragraph

states, "[n]othing in this provision shall be construed to negate the mutuality of this

agreement to arbitrate, and U.S. Consumer Group explicitly agrees to arbitrate,

pursuant to this Policy, any disputed disciplinary action after it has been taken." The

Dispute Resolution Procedure also states that the rules and procedures are based on

5

the rules of the American Arbitration Association, but that some of the rules relating to fees have been modified and expanded so that costs typically shared by the parties are now paid by U.S. Consumer Group. The Dispute Resolution Policy also states that provisions permitting limited discovery have been added to "insure equal access to relevant information." Dispute Resolution Policy, p. 6. Plaintiff is correct that the U.S. Consumer Group reserves the right to revise, amend, modify or discontinue the Policy at any time in its sole discretion. However, the Policy provides that the Amendments will be either published in the Employee Handbook or will be separately released and will be effective thirty days after they are provided to the employees. Dispute Resolution Policy, p. 12.

Examining the Dispute Resolution Policy in light of Missouri contract principles, the Court does not find that it is unconscionable. As previously discussed, procedural unconscionability occurs when the parties have unequal bargaining power or there has been some misrepresentation or the agreement contains fine print. Substantive unconscionability occurs when the terms are unduly harsh. In the instant case, the parties do have unequal bargaining power, but this is to be expected in the employment context. Additionally, while there are some terms of the Agreement which would seem to indicate that the Agreement lacks mutuality, the Court finds that these provisions are minor and also would be expected in the employment context. For example, it would be nonsensical to suggest that any of defendant's employees could change or modify the agreement if they disagreed with any of its provisions. As the Court in Johnson, noted, "[a] reasonable employee would expect that the paperwork he signed at the beginning of his employment would contain some company policy regarding the resolution of

6

employment disputes, including submitting those disputes to arbitration." Id. 320 F.Supp.2d at 667. After reviewing the policy, the Court does not find that its terms are unduly harsh, but rather determines that many of the terms are very generous, such as the provision regarding the payment of fees. Therefore, the Court hereby **GRANTS** Defendant's Motion to Compel Arbitration and to Stay the Case (Doc. # 15).

The Court hereby **ORDERS** that proceedings in this case are stayed pending arbitration of plaintiff's claims. It is further **ORDERED** that the parties shall submit a joint status report to the Court on August 1, 2005, or at such time as the arbitration proceeding is concluded, whichever is earlier.

Date:  May 24, 2005  
Kansas City, Missouri  

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
United States District Judge

7