UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BEVERLEY MARTIN,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**CITIBANK, N.A.,**<br><br>    **Defendant.** | Civil Action No. 07-2297  (RCL) |

**DEFENDANT CITIBANK, N.A.'S NOTICE OF SUPPLEMENTAL AUTHORITY
IN SUPPORT OF ITS MOTION TO DISMISS AND TO COMPEL ARBITRATION**

Defendant Citibank, N.A. ("Citibank"), by its undersigned counsel, hereby submits this Notice of Supplemental Authority in Support of its Motion to Dismiss and to Compel Arbitration.

On May 8, 2008, this Court decided Shelton v. Ritz Carlton Hotel, Co., Civil Action No. 07-2171, 2008 WL 1976556 (D.D.C. May 8, 2008).  A copy is attached hereto as Exhibit 1. Like this case, the Shelton case involved the validity of an arbitration agreement between an employer and an employee.  The employer in Shelton, like Citibank, removed the case from the District of Columbia Superior Court to this Court, and then filed a motion to compel arbitration. Id. at *1-2.  This Court granted in part and denied in part the employer's motion, holding that the employee had to submit to arbitration her claims which arose after she signed the arbitration agreement.  Id. at *4.

In Shelton, this Court rejected several of the same arguments which Plaintiff has raised in this case.  First, the Court rejected the employee's arguments that she could not be bound by the arbitration agreement because of her lack of education and because the employer did not explain

the agreement to her. Id. at *5. The Court noted that, despite the employee's lack of education beyond junior high school, "one who signs a contract has a duty to read it and is obligated according to its terms." Id. In addition, the Court stated that "an employer has no special duty to ensure that its employees understand the implications of signing an arbitration agreement." Id.

Second, the Court rejected the employee's argument that the arbitration agreement was an adhesion contract because she was required to sign it to continue her employment. Id. According to the Court, the agreement was enforceable because, despite the alleged inequality in bargaining power between the employer and the employee, the employee failed to show any grounds for revocation. Id.

Defendant Citibank, N.A. respectfully requests that the Court consider the Shelton decision in ruling on the pending Motion to Dismiss and to Compel Arbitration.

Dated: May 21, 2008

Respectfully submitted,

LITTLER MENDELSON, P.C.

By: /s/ Katherine A. Goetzl
Paul J. Kennedy (D.C. Bar No. 428623)
Katherine A. Goetzl (D.C. Bar No. 457660)
1150 17th Street N.W., Suite 900
Washington, DC 20036
202.842.3400 telephone
202.842.0011 facsimile

Counsel for Defendant Citibank, N.A.

Firmwide:85251568.1 022839.1034

# EXHIBIT 1

--- F.Supp.2d ----, 2008 WL 1976556 (D.D.C.)

<u>Motions, Pleadings and Filings</u>

Only the Westlaw citation is currently available.
United States District Court,
District of Columbia.
Elaine **SHELTON**, Plaintiff,
v.
THE **RITZ CARLTON** HOTEL COMPANY, LLC, Defendant.
Civil Action No. 07-2171 (RMC).
May 8, 2008.

<u>Steven Charles Kahn</u>, Law Offices of Steven C. Kahn, Washington, DC, for Plaintiff.

<u>Tina M. Maiolo</u>, Carr Maloney PC, Washington, DC, for Defendant.

## MEMORANDUM OPINION

<u>ROSEMARY M. COLLYER</u>, District Judge.
　*1 Elaine **Shelton** is an African American woman employed as a cook at The **Ritz Carlton** Hotel ("The **Ritz**") in Washington, D.C. She alleges that she twice applied for a promotion and The **Ritz** denied her application based on her race and gender in violation of Title VII of the Civil Rights Act of 1964, <u>42 U.S.C. § 2000e-5(f)</u>. The **Ritz** seeks dismissal, claiming that Ms. **Shelton** must arbitrate. Ms. **Shelton** opposes. As explained below, the Court grants the motion in part and denies it in part, as the parties' arbitration agreement applies only to one of the alleged incidents of discrimination.

### I. FACTS

　Ms. **Shelton** began working at The **Ritz** on 22d Street in Washington, D.C. in September 2000.[FN1] The **Ritz** operates several departments that employ cooks: an Employee Dining Room, a Banquet Kitchen, the Gardemanger Kitchen, and In Room Dining. The cooking hierarchy in these departments from top down includes an Executive Chef, two Sous Chefs, Cook I, Cook II, and Cook III. Ms. **Shelton** was hired as a Cook III, and within one month, The **Ritz** promoted her to the position of Cook II. As a Cook II, Ms. **Shelton** worked primarily in the Employee Dining Room. Her duties included prepping, cooking, developing menus and recipes, and tracking inventory. Sometimes in the absence of a chef she took a "lead role" in the kitchen. Compl. ¶ 8.

> <u>FN1.</u> Previously, starting in July 1997, Ms. **Shelton** was employed as a cook by Marriott International, Inc., which now owns The **Ritz**.

　In May 2005, Ms. **Shelton** applied for an opening as a Cook I in the Banquet Kitchen. The **Ritz** did not interview her or select her for the position. Instead, The **Ritz** hired an Hispanic male. Ms. **Shelton** alleges, "**Ritz-Carlton** filled the opening with an Hispanic male, an out-of-state candidate who was subsequently forced to resign because of poor work performance." *Id.* ¶ 10.

　In September 2005, Ms. **Shelton** applied for the position of Cook I in the Gardemanger Kitchen. She alleges that she was the sole applicant for the job. *Id.* ¶ 11. The Executive Chef, a Caucasian male, told her that as part of the application process she would be required to participate in a tasting test and her food would be judged based on taste, presentation, food temperature, and organizational skills in preparing the meal. The Sous Chef, an Hispanic male, administered the test. He complained that she did not cut the asparagus properly or use the right plate for her presentation. Ms. **Shelton**

alleges that no other applicant for a Cook I position had ever been required to take a tasting test before. The **Ritz** then withdrew the job posting for the Cook I in the Gardemanger Kitchen. Instead, The **Ritz** created a new Junior Sous Chef position and hired a white male for the position. Ms. **Shelton** contends that The **Ritz** has never hired an African-American as a Cook I at its 22d Street location. *Id.* ¶ 16.

Ms. **Shelton** filed a charge with the Equal Employment Opportunity Commission (the "EEOC"), alleging that The **Ritz** denied her promotion to the May 2005 and the September 2005 Cook I positions based on her race and gender. The EEOC investigated and on May 29, 2007, issued a Determination that The **Ritz** discriminated against Ms. **Shelton** in violation of Title VII and asked The **Ritz** to conciliate. The **Ritz** declined the EEOC's invitation to conciliate, and on July 25, 2007, the EEOC issued a notice of right to sue. Within 90 days, on October 23, 2007, Ms. **Shelton** filed a Complaint in D.C. Superior Court, alleging a single count of discrimination under Title VII.[FN2]

> FN2. In her Complaint, Ms. **Shelton** also alleges that in 2004 she applied for a transfer and promotion to the position of Employee Dining Room supervisor at The **Ritz's** Georgetown location. She did not assert a claim of discrimination based on the 2004 denial of promotion before the EEOC, and thus she cannot bring that claim here due to a failure to exhaust administrative remedies. *Bowden v. U.S.,* 106 F.3d 433, 437 (D.C.Cir.1997) (a Title VII plaintiff must exhaust administrative remedies by filing a timely charge with the EEOC).

*2 On November 30, 2007, the **Ritz** removed this suit to federal district court, and now The **Ritz** seeks dismissal based on lack of jurisdiction, contending that the parties are bound by an agreement to arbitrate. On June 17, 2005, Ms. **Shelton** had signed an employment agreement. The agreement provides for arbitration of employment-related disputes as follows:

> I must request Arbitration if I wish to challenge my termination for any reason or for management decisions that I believe are discriminatory or retaliatory. Arbitration is a process in which my workplace issue is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator, who is provided by the American Arbitration Association ("AAA") runs the privately held proceedings. My Arbitration shall be governed by the AAA's Rules fo Employee Dispute Resolution.
>
> ....
>
> To apply for Arbitration I must complete an Arbitration Request Form. I will be required to pay a $50.00 fee to contribute to the related expenses. I may consult an attorney or another advisor of my choice to participate in the Arbitration at my own expense. The Arbitrator shall be authorized to award whatever remedies are allowed by law. I may request an Arbitration hearing within one year of the management decision I wish to appeal. I understand that by signing this agreement, I am waiving the ability to file a lawsuit to challenge any termination or management decision that is covered by this Arbitration provision.

Def.'s Mot. to Dismiss, Ex. 1. at 11-12. Ms. **Shelton** contends that she is not bound by this arbitration provision.

## II. MOTION TO DISMISS STANDARD

The **Ritz** seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). Because subject matter jurisdiction is an Article III as well as a statutory requirement, "no action of the parties can confer subject [ ]matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia,* 339 F.3d 970, 971 (D.C.Cir.2003). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the

court has subject matter jurisdiction. *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999); *see also McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 182-83 (1936).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States,* 334 F.3d 61, 64, 69 (D.C.Cir.2003). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,* 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 197 (D.C.Cir.1992).

### III. ANALYSIS

**\*3** The question in this case is whether Ms. **Shelton** is bound by the terms of her June 2005 employment agreement to arbitrate both of her claims of discrimination, the May 2005 claim and the September 2005 claim. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16, was passed by Congress "to establish an alternative to the complications of litigation." *Revere Copper & Brass Inc. v. Overseas Private Inv. Corp.,* 628 F.2d 81, 83 (D.C.Cir.1980). Further, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241 (1962); *accord AT & T Tech., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648 (1986). "By agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the court [ ] for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31 (1991). An individual who agrees to arbitrate her claims does not forego her substantive rights afforded by statute; she merely submits to resolution in an arbitral rather than a judicial forum. *Id.* at 26.

When a party seeks arbitration, first the Court must determine whether there is a valid agreement to arbitrate. *Nelson v. Insignia/Esg, Inc.,* 215 F.Supp.2d 143, 150 (D.D.C.2002). Then, the Court must determine whether the specific dispute falls within the scope of the arbitration agreement. *Id.* To determine whether there is a valid arbitration agreement, federal courts apply ordinary state law contract principles. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Although the parties have failed to address the choice of law question, the Court concludes that D.C. law controls, because the formation and the performance of the contract occurred here, Ms. **Shelton** is a D.C. resident, and The **Ritz** does business in D.C. *See Nelson,* 215 F.Supp.2d at 150 (under D.C. choice of law rules, the law of the jurisdiction with the most substantial interest in the matter applies). Under D.C. law, the party asserting the existence of the contract has the burden of proving its existence, that there was a meeting of the minds as to all material respects. *Bailey v. Fed. Nat'l Mortgage Ass'n,* 209 F.3d 740, 746 (D.C.Cir.2000). The party resisting arbitration bears the burden of proving that the claims asserted are not suited to or intended for arbitration. *Nelson,* 215 F.Supp.2d at 150 (citing *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 91 (2000)).

### A. Arbitration of May 2005 Claim Not Required

The **Ritz** asserts that the agreement to arbitrate set forth in the June 2005 employment contract requires Ms. **Shelton** to arbitrate her May 2005 discrimination claim. The June 2005 contract, however, was not in effect in May 2005. Ms. **Shelton** did not execute the employment agreement until June 17, 2005. Further, the employment agreement does not contain any language that could be construed as indicating an intent to apply the agreement retroactively.

**\*4** The **Ritz** argues that because the arbitration agreement provides that an employee "may request an Arbitration hearing within one year of the management decision" the employee wishes to appeal, that the arbitration agreement should apply to any dispute between The **Ritz** and Ms. **Shelton** for the year prior to the execution of the arbitration agreement. The Court does not interpret the one-year time bar as a provision for retroactive application of the contract. While The **Ritz** is correct that doubts regarding an arbitration provision must be resolved in favor of coverage, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983), the contract at issue here

does not give rise to doubts. When a contract is not ambiguous, a court must interpret it according to its plain meaning. *May v. Continental Cas. Co.,* 936 A.2d 747, 751 (D.C.2007). "A contract is not ambiguous merely because the parties disagree over its meaning. Rather, a contract is ambiguous if, on its face, it has more than one reasonable interpretation." *Id.* (citations omitted). The contract at issue here is not ambiguous on its face. The one-year provision merely imposes a time bar on claims; it does not provide for retroactive application of the contract itself. Because Ms. **Shelton** cannot be required to submit her May 2005 claim to arbitration under a June 2005 agreement, the May 2005 failure to promote claim may proceed in this Court.

**B. Arbitration of September 2005 Claim Required**

With regard to Ms. **Shelton's** September 2005 claim, The **Ritz** has met its burden of showing a valid agreement to arbitrate, despite Ms. **Shelton's** numerous arguments to the contrary.

First, Ms. **Shelton** argues that the employment agreement provides for a three-step dispute resolution process, that promotion disputes are excluded from step two, and she reasons, they thus must be excluded from step three. An examination of the agreement shows this logic to be faulty. The agreement provides for a three stage process-the "Open Door Process," "Peer Review," and arbitration. Under the agreement, the "Open Door Process means that [employees] have an opportunity to resolve workplace issues early and informally ." Def.'s Mot. to Dismiss, Ex. 1 at 6. This step does not define "workplace" issues; it provides that employees may attempt to resolve issues without fear of retaliation by speaking first to their supervisor, then to the next level of management through the Division Head, and then to the General Manager. The employee may by-pass any step and speak to the Director of Human Resources. *Id.* Stage two, Peer Review, allows for formal dispute resolution before a panel of employees. *Id.* at 7. Peer Review expressly is "not available" for management decisions regarding promotion and transfer decisions. *Id.* at 8. Stage three, arbitration, provides, "I must request Arbitration if I wish to challenge my termination for any reason or for management decisions that I believe are discriminatory or retaliatory." *Id.* at 11. Thus, although the contract excludes promotion decisions from the Peer Review process, it includes such decisions in the arbitration requirement. The phrase "management decisions that I believe are discriminatory" is broad enough to include a claim of discriminatory denial of promotion.

*\*5* Second, Ms. **Shelton** argues that she did not knowingly and voluntarily waive her right to a jury trial.[FN3] She asserts that due to her junior high education, she lacked the background to understand the contract. Pl.'s Resp. at 9. The Court must reject this argument as under both D.C. and federal law one who signs a contract has a duty to read it and is obligated according to its terms. *Paterson v. Reeves,* 304 F.2d 950, 951 (D.C.Cir.1962); *Pers Travel, Inc. v. Canal Square Assoc.,* 804 A.2d 1108, 1110 (D .C.2002). A signature on a contract indicates a mutuality of assent to which a party is bound unless she can show some special circumstance such as fraud, duress, or mutual mistake. *Nelson,* 215 F.Supp.2d at 151-52. An employer has no special duty to ensure that its employees understand the implications of signing an arbitration agreement. *Id.* The employment contract provides, "I understand that by signing this agreement, I am waiving the ability to file a lawsuit to challenge any termination or management decision that is covered by this Arbitration provision." Def.'s Mot. to Dismiss, Ex. 1. at 12. Ms. **Shelton** had a duty to read the employment agreement and she is obligated by its provisions, including the agreement waiving her right to file a lawsuit and to trial by jury. She does not allege fraud, duress, or mutual mistake.

> FN3. While an individual has a right to a jury trial, she also has the right to contract to seek relief in another way.

Third, Ms. **Shelton** contends that the agreement cannot be enforced because it is an adhesion contract-she was required to sign it to continue her existing employment. Pl.'s Resp. at 9-10. An adhesion contract is one prepared by the party with greater bargaining power and presented to the other party on a take it or leave it basis. Black's Law Dictionary (8th ed.) at 342. "Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer,* 500 U.S. at 33. Arbitration agreements are enforceable unless there are grounds in law or equity for revocation. *Id.* Ms. **Shelton** and The **Ritz**

entered into a valid at-will employment contract. See Bell v. Ivory, 966 F.Supp. 23, 29 (D.D.C.1997) (under D.C. law, the mutual promises to employ and serve creates a contract terminable at will by either party). Ms. **Shelton** has asserted no grounds for revocation, and she has not shown that the contract is unenforceable.[FN4]

> FN4. Ms. **Shelton** also argues that the contract lacks mutuality because it requires the employee to arbitrate but it does not require The **Ritz** to arbitrate. This contention is without merit. The agreement requires the employee, and not The **Ritz**, to arbitrate, as the right to bring a claim of discriminatory or retaliatory management decisions belongs to the employee, not to the employer.

Accordingly, the Court will grant in part The **Ritz's** motion to dismiss, and will dismiss Ms. **Shelton's** discrimination claim based on the September 2005 failure to promote.

### C. Limitations on Arbitration

Ms. **Shelton** argues that to the extent arbitration is required, the Court should order certain limitations. She notes that she cannot be required to pay arbitration fees and expenses under Cole v. Burns Internat'l Sec. Servs., 105 F.3d 1465 (D.C.Cir.1997). Under Cole, an employee cannot be required to pay for the services of an arbitrator or judge in order to pursue statutory rights under Title VII. The arbitration contract in Cole was silent with regard to the payment of arbitration fees. The court construed the ambiguity in favor of the employee and required the employer to pay the entire arbitration fee. Id. at 1486; see also Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90-91 (2000) (arbitration agreement that was silent as to costs was enforceable unless the costs would be so great as to preclude an employee from enforcing her statutory rights)).

*6 The arbitration contract between Ms. **Shelton** and The **Ritz** provides that the employee must pay a $50 fee "to contribute to the related expenses." Ms. **Shelton** indicates in detail that she cannot afford arbitration fees and expenses in excess of this amount. Pl.'s Resp., Ex. 1 **Shelton** Aff.[FN5] Because the agreement is silent as to who pays arbitration fees and expenses in excess of this $50 (and Ms. **Shelton** cannot afford more than this), the Court construes the ambiguity in favor of Ms. **Shelton**. The **Ritz** shall be solely responsible for the payment of all arbitration fees and expenses in excess of $50.

> FN5. The Cole decision does not bar filing fees and other administrative expenses in a minimal amount. LaPrade v. Kidder, Peabody & Co., Inc., 246 F.3d 702 (D.C.Cir.2001).

Ms. **Shelton** also contends that she is entitled to meaningful discovery under Cole. See Cole, 105 F.3d at 1482 (arbitration agreement must provide for some discovery). "Agreements to arbitrate are desirable precisely because they trade the procedures of the federal courts for the simplicity, informality, and expedition of arbitration." Id. Although discovery is not as extensive in arbitration, this is counterbalanced by the fact that arbitration is not bound by the rules of evidence. Gilmer, 500 U.S. at 31. Ms. **Shelton** may obtain discovery in arbitration, as the arbitration agreement between the parties is governed by the AAA rules. AAA Rule 9 authorizes arbitrators to order discovery "by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair explanation of the issues in dispute, consistent with the expedited nature of arbitration." See www.adr.org/sp.asp?id=32904# 9 (last visited May 7, 2008). Ms. **Shelton** requests that if the Court orders arbitration, that she be permitted discovery, including depositions. The Court declines Ms. **Shelton's** invitation to interfere in the arbitration process. The AAA rules will govern that process, and discovery will be permitted if she requests it before the hearing and the arbitrator agrees.

Third and finally, Ms. **Shelton** asserts that in the event arbitration is required, The **Ritz** should be deemed to have waived the one-year time bar set forth in the employment contract. The contract requires employees to request arbitration within one year of the management decision that they wish to appeal. Def.'s Mot. to Dismiss, Ex. 1 at 12. Ms. **Shelton's** failure to promote claim accrued in September of 2005, and she did not file this suit until October 2007. Thus, she fears her claim is time

barred. Pl.'s Resp. at 12. In its pleadings, The **Ritz** does not assert the one-year time bar, but instead requests the Court to compel Ms. **Shelton** to proceed in arbitration. The Court construes The **Ritz**' request as a concession on the time bar issue. Accordingly, The **Ritz** is deemed to have waived the one-year time bar and it is precluded from arguing to the arbitrator that Ms. **Shelton's** claim was untimely.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss filed by The **Ritz** [Dkt. # 3] will be granted in part and denied in part. Ms. **Shelton's** allegation of discrimination relating to the denial of promotion in September 2005 will be dismissed, as it is governed by the parties' agreement to arbitrate. The **Ritz** will be precluded from arguing to the arbitrator that Ms. **Shelton's** claim was filed too late. Ms. **Shelton's** allegation that The **Ritz** discriminated against her when it denied her a promotion in May 2005 remains, as that claim is not sub j ect to the arbitration agreement.[FN6] A memorializing order accompanies this Memorandum Opinion.

> FN6. In light of the Court's decision, should Ms. **Shelton** desire to arbitrate her May 2005 claim along with her September 2005 claim, she may do so by filing a motion to stay this case pending arbitration.

D.D.C.,2008.
**Shelton** v. The **Ritz Carlton** Hotel Co., LLC
--- F.Supp.2d ----, 2008 WL 1976556 (D.D.C.)


Motions, Pleadings and Filings (Back to top)

• 2007 WL 4759640 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss and Compel Arbitration (Dec. 27, 2007) Original Image of this Document (PDF)
• 2007 WL 4759639 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss and to Compel Arbitration (Dec. 14, 2007) Original Image of this Document (PDF)
• 2007 WL 4759638 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and to Compel Arbitration (Dec. 4, 2007) Original Image of this Document (PDF)
• 2007 WL 4759637 (Trial Pleading) Complaint for Discriminatory Denial of Promotion (Nov. 30, 2007)
• 1:07cv02171 (Docket) (Nov. 30, 2007)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.