UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BEVERLEY MARTIN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 07-2297 (RCL) |
| ) | |
| CITIBANK, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on the defendant's Motion [5] to Dismiss and to Compel Arbitration. Upon consideration of defendant's motion, plaintiff's opposition [7] thereto, defendant's reply [12] brief, the applicable law, and the entire record herein, the Court finds that the motion will be GRANTED. The Court's reasoning is set forth below.

**I. BACKGROUND**

Defendant, Citibank, comes before this Court seeking an Order to Dismiss and to Compel Arbitration. In the underlying case before the Court, plaintiff alleges violations of the District of Columbia Human Rights Act (DCHRA) and Title VII of the Civil Rights Act of 1964 for sex discrimination, sexual harassment, retaliation, and negligent supervision by defendant and defendant's employee. Plaintiff, an employee of defendant Citibank's Adams Morgan Financial Center, alleges that she "was subjected to a campaign of sexual harassment leveled against her by [defendant's employee] . . . in the form of sexually offensive comments and unwelcome touching" over the course of seven (7) months. (Compl. ¶ 10.) Plaintiff further asserts that defendant's response to plaintiff's frequent complaints was inadequate and retaliatory.

1

Plaintiff filed her complaint with the Superior Court of the District of Columbia, and defendant subsequently removed the action to this Court. Defendant filed its Motion to Dismiss and to Compel Arbitration on December 27, 2007, seeking an order from this Court: (1) dismissing plaintiff's complaint and (2) compelling plaintiff to arbitrate the claims contained in her complaint, pursuant to defendant's employment agreement signed by plaintiff. (Def.'s Mot. to Dismiss and to Compel Arbitration at 1.)

## II. DISCUSSION

### A. Legal Standard

The Federal Arbitration Act ("FAA") provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates a strong presumption favoring the enforcement of arbitration agreements, and doubts regarding the scope of an arbitration agreement must be resolved in favor of arbitration. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987) (arbitration agreements must be rigorously enforced); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 482 U.S. 1, 24–25 (1983). Arbitration should be ordered unless it can be said with certainty that the arbitration provision cannot be interpreted to cover the dispute. *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). This "liberal federal policy favoring arbitration agreements, manifested by . . . the Act as a whole, is as bottom a policy guaranteeing the enforcement of private contractual arrangements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985).

However, because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Tech.*, 475 U.S. at 648. Thus, whether or not the dispute must be arbitrated is a matter of contract between the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995). Parties cannot be required to arbitrate unless they have agreed to do so, and the authority of arbitrators to resolve disputes is derived from the agreement of parties to engage in arbitration. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *Mastrobuono v. Shearson Lehman Hutton, Inc*, 514 U.S. 52, 57 (1995); *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 759 (D.C. Cir. 1988). It is the Court, not the arbitrator, that must decide whether a dispute is subject to arbitration: "a gateway dispute about whether the parties are bound by a given arbitration clause raises 'a question of arbitrability' for a Court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

State contract law governs whether there is an enforceable agreement to arbitrate. *First Options of Chicago*, 514 U.S. at 943–44. Under District of Columbia contract law, "the determination of whether the parties have consented to arbitrate is a matter to be determined by the courts on the basis of the contract between parties." *Bailey v. Fed. Nat'l Mortgage Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000). "The party asserting the existence of a contract [i.e. defendant] has the burden of proving its existence." *Id.* at 746. However, "[t]he party resisting arbitration [i.e. plaintiff] bears the burden of proving that the claims at issue are unsuitable for arbitration." *Nelson*, 215 F. Supp. 2d at 150; *see Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000) (party resisting arbitration has initial burden of proof regarding issue of unenforceability of arbitration agreement).

If an arbitration agreement is valid and enforceable, the Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[T]he proper approach to employ in reviewing the defendant's motion to dismiss and compel arbitration is to apply the same standard of review that governs Rule 56 motions." *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003). Thus, it is appropriate to grant a party's motion to compel arbitration when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking to compel arbitration bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether there is a genuine issue of material fact sufficient to preclude summary judgment, the non-movant's statements should be accepted as true and all inferences should be drawn in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

  **B.**  **Plaintiff's Objection that Defendant has Waived Any Right to Arbitration**

Defendant issued its notice of removal from the Superior Court of the District of Columbia to this Court, and only after successful removal did defendant move to dismiss and to compel arbitration. Plaintiff objects on the basis that defendant waived his right to arbitration by removing the case to a federal forum and by failing "to comply timely with its contractual obligation to seek arbitration within the statute of limitations for [p]laintiff's Title VII and

DCHRA claims." (Pl.'s Opp. to Def.'s Mot. to Dismiss and to Compel Arbitration at 1.) Plaintiff fails to raise a genuine issue of material fact or provide anything beyond "the mere existence a scintilla of evidence" in support of her claims. *Anderson*, 477 U.S. at 252. As discussed below, plaintiff's objection shall be overruled.

      **i.**     **Removal**

Plaintiff correctly asserts that the right to arbitrate can be waived and that the proper test is whether the moving party "has acted inconsistently with the arbitration right." (Pl.'s Opp. at 3.) However, precedent indicates that merely removing the action, without attempting to engage in discovery or to dispute plaintiff's claims on the merits, does not constitute active participation in the lawsuit. *Khan v. Parsons Global Servs., Ltd.*, 480 F. Supp. 2d 327 (D.D.C. 2007), *rev'd on other grounds*, 521 F.3d 421 (D.C. Cir. 2008). Plaintiff counters that the Court of Appeals reversed this Court's order in *Khan* but fails to recognize that the Court of Appeals did so on other grounds, never insinuating that removal may signify waiver. *Id*. Rather, the Court of Appeals based its decision upon consideration of two primary questions: (1) whether defendant "invited the [Court] to consider the merits of the [plaintiff's] claims[,] and (2) whether the plaintiff suffered significant prejudice as a result of defendant's actions. *Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 428 (D.C. Cir. 2008). This Court is satisfied that neither consideration applies to the removal at issue in this case. Because arbitrability is a question for the Court and the sole focus of defendant's actions thus far, defendant's decision to remove the case to a federal forum before promptly filing its Motion to Dismiss and to Compel Arbitration may not be deemed active participation in the lawsuit. *Howsam*, 537 U.S. at 84.

ii. **Timeliness**

Plaintiff asserts that defendant failed to file its Motion to Compel Arbitration in a timely fashion by waiting more than a year despite having "ample notice of the dispute." (Pl.'s Opp. at 7.) Plaintiff correctly states that the Employment Arbitration Policy requires that any assertion of the right to arbitrate "be brought within the statute(s) of limitations applicable to the claims asserted by the claimant" and that Title VII and DCHRA claims each have a one year statute of limitations. (*Id.*) However, defendant is under no obligation to initiate arbitration as plaintiff is the claimant in this matter. (Def.'s Reply at 5.) Defendant asserts no claims or counterclaims against plaintiff. (*Id.*) As the claimant, plaintiff must initiate arbitration when defendant's Motion is granted. (*Id.*) Defendant's sole purpose in this judicial proceeding is to assert its right of arbitration. For this reason, defendant's assertion that no arbitrable claim existed prior to plaintiff filing her complaint on October 22, 2007 is valid. (*Id.*) Defendant's December 27, 2007 motion was therefore timely and in compliance with the Employment Arbitration Policy.

C. **Plaintiff's Objection that No Binding Arbitration Agreement Exists Between the Parties**

Plaintiff asserts that defendant's reliance on plaintiff's signed Acknowledgment and Receipt forms in 2001 and 2002 is flawed on the basis that these forms do not evidence a binding contractual obligation. (Pl.'s Opp. at 9.) Plaintiff puts forth three arguments in support of this objection: (1) she was denied the opportunity to review the Employment Handbook and Arbitration Policy prior to signing the Acknowledgment and Receipt forms, (2) the Acknowledgment and Receipt forms are not binding contracts, and (3) even if they were, special circumstances exist that relieve plaintiff of any contractual obligations. (*Id*. at 9–14.) Plaintiff

fails to raise a genuine issue of material fact or provide anything beyond "the mere existence of a scintilla of evidence" in support of her claims. *Anderson*, 477 U.S. at 252. As discussed below, plaintiff's objection shall be overruled.

      i.      **Opportunity to Review**

Plaintiff asserts that in all her years of employment with defendant, she has never received nor been afforded the opportunity to review the Employment Handbook. (Pl.'s Opp. at 9.) Defendant counters that the Employment Handbook has been available to all company employees through defendant's intranet since at least June 2004. (Def.'s Reply at 7.) Defendant further asserts that one of plaintiff's job duties from 2000-2003 was to distribute and ensure that her subordinates received copies of the Employee Handbook. (*Id.*) Plaintiff denies that she was ever charged with such a task. (Pl.'s Surreply at 1.) It is the opinion of this Court that whether or not plaintiff had access to the Employee Handbook in her official capacity as Client Services Manager, it was plaintiff's sole responsibility to take advantage of Company resources such as the intranet in order to gain an understanding of the Handbook's terms. The Court is satisfied that in making the pertinent information available to all employees, defendant provided plaintiff ample opportunity for review.

      ii.      **Binding Contract**

Though plaintiff concedes signing the Acknowledgment and Receipt forms, she argues that neither of these forms constitute a binding agreement to abide by the terms set forth in the Employment Handbook on the basis that there was no mutual assent or meeting of the minds. (Pl.'s Opp. at 10–14.) In plaintiff's view, the forms merely indicate receipt of the Employment Handbook, not assent to its terms. (*Id.*) Though the forms in question are titled

"Acknowledgment" and "Receipt," they contain explicit and conspicuous provisions that make clear defendant's intent to bind. Specifically, the 2002 Receipt form, signed by plaintiff, stipulates: "I understand that this *Handbook* contains a provision that requires me to submit employment-related disputes to binding arbitration." (*Receipt Form*, Ex. 4 to Def.'s Reply at 1.) By her signature, plaintiff agreed to be bound by the Employment Arbitration Policy. In the eyes of this Court, such apparent mutual assent suffices to establish the existence of a binding contractual agreement.

### iii.    Special Circumstances

Plaintiff correctly asserts that while a signature typically indicates mutual assent, the existence of certain special circumstances may relieve a party of her contractual obligations. (Pl.'s Opp. at 13.) Plaintiff cites (1) defendant's failure to explain the Employment Arbitration Policy to her, (2) plaintiff's lack of education and experience, (3) plaintiff's fear of losing her job, and (4) defendant's refusal to let plaintiff see the Employment Handbook. (Def.'s Reply at 11.) This Court has already rejected plaintiff's first and last arguments on the basis that defendant had no affirmative obligation to ensure plaintiff's understanding of the agreement once the Receipt and Acknowledgment forms were signed and the Employee Handbook was made available on the Company intranet to all employees.

Plaintiff's second argument regarding the parties' relative experience and education also fails. (Pl.'s Opp. at 13.) Despite a rudimentary understanding of employment law and civil rights legal procedures, plaintiff, a high school graduate who has taken multiple college-level business courses and who worked for thirteen (13) years prior to her employment with defendant, was undoubtedly capable of reading the provisions and understanding the implications of signing

the Receipt and Acknowledgment forms. (Def.'s Reply at 12.) This Court has previously established and still maintains that "an employer has no special duty to ensure that its employees understand the implications of signing an arbitration agreement." *Shelton v. Ritz Carlton Hotel, Co.*, No. 07-2171, 2008 WL 1976556, at *5 (D.D.C. May 8, 2008). Finally, plaintiff's assertion that she only signed the forms because she feared for her job is neither supported by any evidence nor a compelling argument. Conditioning employment upon acceptance of the Arbitration Policy is legal and valid so long as defendant does not require employees to pay all or part of the arbitrator's fees, and an employee's refusal to abide by company policies is certainly grounds for termination. *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1483–84 (D.C. Cir. 1997). If plaintiff did not wish to be bound by defendant's contract, she should have sought other employment.

### D.    Plaintiff's Objection that the Arbitration Policy is an Unenforceable Contract of Adhesion

In determining whether the Employment Arbitration Policy constitutes an enforceable contract, the Court must establish that (1) the parties entered into a valid and enforceable arbitration agreement, and (2) the agreement encompasses the claims raised in plaintiff Martin's complaint. *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 149–50 (D.D.C. 2003). This Court has already determined that defendant's Employment Arbitration Policy is a legally binding contract, and plaintiff's claims clearly fall within the scope of "employment disputes based on legally protected rights." (*Employee Handbook*, Ex. 3 to Def.'s Mot. at 35.) Its focus must now turn to whether that contract is enforceable. (Pl.'s Opp. at 14.) Plaintiff asserts that the Employment Arbitration Policy is an "unconscionable contract of adhesion, and is therefore

invalid." (*Id.* at 15.) Plaintiff bases this statement on her belief that she "lacked meaningful choice in signing the agreement" and that "the contract terms forced upon [her] are so one-sided and favorable to [defendant] as to render the contract unenforceable." (*Id.* at 16–17.) Plaintiff must prove both of these factors to establish unconscionability, but plaintiff fails to raise a genuine issue of material fact or provide anything beyond "the mere existence of a scintilla of evidence" in support of either claim. *Anderson*, 477 U.S. at 252. As discussed below, plaintiff's objection shall be overruled.

### i. Meaningful Choice

Plaintiff claims that she lacked meaningful choice in signing the agreement because of a "gross inequality of bargaining power" and because defendant "exploited its power to [plaintiff's] detriment by thrusting upon her contract terms that it ultimately would not even permit her to see." (Pl.'s Opp. at 16.) Plaintiff bases her first claim on defendant's alleged threat to terminate plaintiff's employment if she refused to sign the document. (*Id.*) However, "[m]ere inequality of bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context[,]" and plaintiff provides no evidence in support of this allegation that goes beyond "merely colorable." *Shelton*, 2008 WL 1976556, at *5 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)); *see Anderson*, 477 U.S. at 149–50. The 2001 Acknowledgment of Receipt form, signed by plaintiff, does explicitly state that "[a]rbitration is an essential element of [the] employment relationship and a condition of employment." (*Acknowledgment of Receipt Form*, Ex. 2 to Def.'s Reply at 1.) It further states that "continued employment will constitute acceptance of the Arbitration Policy." (*Id.*) Conditioning employment upon acceptance of the Arbitration Policy is legal and valid so

long as defendant does not require employees to pay all or part of the arbitrator's fees, and defendant does not. *Cole*, 105 F.3d at 1483–84.

Plaintiff, in her second claim, again reiterates that she "was never provided either the arbitration policy or the handbook, despite her repeated requests for a copy of the handbook." (Pl.'s Opp. at 16.) This statement is directly contradicted by the evidence. The Court can think of no conceivable reason why in plaintiff's eight (8) years of employment prior to the alleged harassment, she never took advantage of the opportunity to review the Handbook and Arbitration Policy, available to all employees on the Company's intranet. The Court agrees with defendant that plaintiff "had years to review the Company's Employee Handbooks and Employment Arbitration Policy, and to withdraw her agreement to comply with the Policy if she disagreed with its provisions." (Def.'s Reply at 7.) Plaintiff's decision to stay or to seek other employment was ultimately her own, and knowledge by plaintiff that her continued employment was conditional upon assent to the Arbitration Policy does not negate plaintiff's meaningful choice in signing the document.

### ii.  Unreasonably Favorable Terms

So long as defendant's arbitration policy (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all types of relief that would otherwise be available in court, and (5) does not require the employee to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum[,]" it may be required as a condition of employment. *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997). These guidelines seek to protect employees by providing an adequate and neutral forum in which they may vindicate their rights. *Id.*

Plaintiff asserts that the terms of defendant's Employment Arbitration Policy unreasonably favor defendant in three ways: (1) the terms are ambiguous and unilateral, (2) the forum is inadequate in that it precludes punitive relief and jury review, and (3) defendant possesses the ability to modify the terms of the policy at its sole discretion. (Pl.'s Opp. at 17-20.) Defendant counters that all examples provided by plaintiff in support of her claim that the terms are ambiguous and unilaterally favorable have been misinterpreted or taken out of context. (Def.'s Reply at 15.) For example, when plaintiff alleges that the policy "does not require [defendant] to institute arbitration," the provision actually goes on to say, "before taking disciplinary action of any kind, including termination." (Pl.'s Opp. at 18; *Employee Handbook*, Ex. 3 to Def.'s Mot. at 35.) Severing the sentence's second half drastically alters its meaning. The provision in its entirety protects defendant's ability to take disciplinary action without requiring that it first launch a full scale arbitration proceeding. It does not, as plaintiff suggests, indicate that the obligation to arbitrate matters arising between defendant and employees unilaterally affects the latter group. Defendant addresses plaintiff's second concern by asserting that the provision regarding punitive damages could be easily severed from the policy and that the company would be willing to do so when appropriate under District of Columbia law. (Def.'s Reply at 15.) The Court agrees with defendant that it is unnecessary to render an entire contract unenforceable when severance of the particular provision at issue, when appropriate, is possible. Finally, in order to modify the terms of the policy, defendant must provide thirty (30) days advance notice to employees, barring any "unfair retroactive application of amendments."

(*Id*. at 18.)  The Court is satisfied that requiring defendant to provide thirty days notice of prospective modifications affords employees sufficient protection against inequitable assertions of power.

### III. <u>CONCLUSION</u>

This Court is satisfied that the evidence and pleadings raise no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  For the foregoing reasons, defendant's Motion to Dismiss and to Compel Arbitration shall be GRANTED.

A separate order shall issue this date.


Signed by Chief Judge Royce C. Lamberth on June 24, 2008.